Ruben GONZALEZ, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 45A04–0101–CR–29.

Court of Appeals of Indiana.

Oct. 25, 2001.

⚙═29(6)

Marce Gonzalez, Jr., Merrillville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROOK, Judge.

### Case Summary

Appellant-defendant Ruben Gonzalez ("Gonzalez") appeals his waiver of his right to a jury trial on a habitual offender charge. We affirm.

### Issue

Gonzalez raises a single issue for review, which we restate as whether he knowingly waived his right to jury trial.

### Facts and Procedural History

The facts most favorable to the judgment indicate that on the evening of January 21–22, 2000, Jose Germain was managing a bar in East Chicago, Indiana. That evening, Gonzalez fought at least once with two other bar patrons, and Germain asked him to leave the bar. After last call, Germain locked the front door and let customers out through the side door. When Gonzalez re-entered the bar through the side door, Germain told him that the bar was closed and that he had to leave. Gonzalez ignored Germain and began arguing with the two men he had fought with earlier. Germain approached Gonzalez and again told him that he had to leave, whereupon Gonzalez drew a knife from his pocket and stabbed Germain under his chin, causing profuse bleeding. Germain was initially

treated for the laceration at the local emergency room; after he began vomiting blood, however, x-rays and a CT scan revealed a severe injury to the back of his throat. Germain was transferred to a hospital in Chicago, where he underwent a tracheotomy and specialized surgery to repair the injury. At the time of Gonzalez' trial, Germain had undergone additional surgery, had difficulty talking and eating, and had difficulty moving, feeling, and tasting food with his tongue.

The State charged Gonzalez with aggravated battery,[1] a Class B felony, with battery[2] as a Class C felony, and with being a habitual offender.[3] On November 15, 2000, a jury found Gonzalez guilty of aggravated battery and battery. After polling the jury, the trial court entered judgment on the aggravated battery verdict and initiated the following sidebar:

> THE COURT: We talked earlier about the Habitual Offender phase.[4] Is it your client's wish to proceed with the trial by a jury or is he willing to waive the jury and be tried by the Court?
> BY MR. WOLOSHANSKY: He is willing to waive. And I ask the Court to bring him up here.
> THE COURT: Mr. Gonzalez, will you come up here, please? You understand—can you hear me all right? On the habitual offender you have the right to be tried by the jury or you can waive

the jury and submit that to the Court. Your attorney has indicated you wish to waive the jury and submit that to the Court. Is that what you want to do? You have to respond audibly so the court reporter can pick you up.

> [GONZALEZ]: Yes, sir.
> THE COURT: And you understand what I have told you?
> [GONZALEZ]: Yes, sir.
> THE COURT: Okay.

The trial court dismissed the jury, heard evidence that Gonzalez had accumulated two prior unrelated felony convictions,[5] and found him to be a habitual offender. On December 22, 2000, the court vacated the battery "verdict and judgment"[6] and sentenced Gonzalez to twenty years on the aggravated battery charge, with an additional twenty years on the habitual offender charge, for a total of forty years.

### Discussion and Decision

 "The United States and Indiana Constitutions guaranty the right to trial by jury." *Poore v. State*, 681 N.E.2d 204, 206 (Ind.1997) (footnotes omitted); *see* U.S. CONST. amend. VI (guaranteeing "the right to a speedy and public trial, by an impartial jury" in all criminal prosecutions); IND. CONST. art. I, § 13 (guaranteeing the right to "a public trial, by an impartial jury," in all criminal prosecutions).[7] "The right to

---

1. IND.CODE § 35–42–2–1.5.

2. *Id.* § 35–42–2–1.

3. *See id.* § 35–50–2–8(d) ("A person is a habitual offender if the jury (if the hearing is by jury) or the court (if the hearing is by the court alone) finds that the state has proved beyond a reasonable doubt that the person had accumulated two (2) prior unrelated felony convictions.").

4. The discussion to which the trial court refers does not appear in the record.

5. Gonzalez was convicted of criminal recklessness as a Class D felony in 1992 and of burglary as a Class C felony in 1994.

6. The record does not indicate that the trial court ever entered judgment on the battery verdict.

7. As Judge Buchanan observed in *Smith v. State*, 451 N.E.2d 57, 60 (Ind.Ct.App.1983), "The right to jury trial in criminal cases is one of the sacred cows long nurtured in the pasturelands of our legal system."

trial by jury applies to habitual offender proceedings." *Dixie v. State,* 726 N.E.2d 257, 259 (Ind.2000) (citing Ind.Code § 35–50–2–8). "A person charged with a felony has an automatic right to a jury trial; the defendant is presumed not to waive this right unless he affirmatively acts to do so." *Poore,* 681 N.E.2d at 207.[8] "It is fundamental error to deny a defendant a jury trial unless there is evidence of the defendant's knowing, voluntary and intelligent waiver of the right." *Reynolds v. State,* 703 N.E.2d 701, 704 (Ind.Ct.App.1999). "The defendant must express his personal desire to waive a jury trial and such a personal desire must be apparent from the court's record," *Poore,* 681 N.E.2d at 206, whether in the form of a written waiver or a colloquy in open court. *See Good v. State,* 267 Ind. 29, 32, 366 N.E.2d 1169, 1171 (1977).

Article I, Section 19 of the Indiana Constitution provides that "the jury shall have the right to determine the law and the facts" in all criminal cases.[9] In *Seay v. State,* 698 N.E.2d 732 (Ind.1998), our supreme court definitively stated that Article I, Section 19 applies to habitual offender proceedings and that "a defendant is entitled to an instruction similar to that given during the guilt phase of a trial, *i.e.,* the jury has the right to determine the law and the facts." *Id.* at 736 and n. 8.[10] The court further explained that "at issue was the jury's ability to find Seay to be a habitual offender (or not to be a habitual offender) irrespective of the uncontroverted proof of prior felonies." *Id.* at 736.[11] Gonzalez contends that his waiver of his constitutional right to jury trial was unknowing [12] because the trial court failed to

---

8. *Cf.* Ind.Code § 35–37–1–2 ("The defendant and prosecuting attorney, with the assent of the court, may submit the trial to the court. All other trials must be by jury."); Ind.Crim. Rule 22 (requiring defendant charged with a misdemeanor to file written demand for jury trial "not later than ten (10) days before the first scheduled trial date" to avoid waiver of jury trial).

9. In *Beavers v. State,* 236 Ind. 549, 556, 141 N.E.2d 118, 121 (1957), our supreme court noted that Indiana and Maryland are "the sole survivors of this archaic constitutional provision that a jury may determine the law in criminal cases." *See* Md. Const. Decl. Of Rights, art. 23 ("In the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of fact, except that the Court may pass upon the sufficiency of the evidence to sustain a conviction."); *see also Wyley v. Warden, Maryland Penitentiary,* 372 F.2d 742, 746 (4th Cir.1967) ("The origin of [this doctrine] is not known with certainty. The principal theories propounded are the colonists' fear of tyrannical and arbitrary Crown judges, the large number of judges without legal training, and the capacity of a highly democratic tribunal, such as a jury, to decide matters, legal as well as factual, in small agricultural communities."), *cert. denied,* 389 U.S. 863, 88 S.Ct. 121, 19 L.Ed.2d 131 (1967).

10. *See also Parker v. State,* 698 N.E.2d 737, 742 (Ind.1998) ("Encompassed within this power [to determine both the law and the facts] is the jury's independent and separate authority to determine whether the defendant is a habitual offender after it has concluded that the State has properly proven two prior felonies.") (citing *Seay,* 698 N.E.2d at 736).

11. *See Seay,* 698 N.E.2d at 736 n. 9 ("Justice DeBruler once noted that the policy of a trial by jury for habitual offender charges 'even sanctions exercise of the jury nullification power.'") (quoting *Weatherford v. State,* 619 N.E.2d 915, 918 (Ind.1993) (DeBruler, J., dissenting)).

12. In his appellate brief, Gonzalez variously characterizes his waiver as not being "intelligently and voluntarily" or "knowingly and intelligently" made. In the context of waiver of the right to trial by jury, we have stated that " '[a] voluntary waiver occurs if the conduct constituting the waiver is the product of a free will; a knowing waiver is the product of an informed will; [and] an intelligent waiver is the product of a will that has the capacity to understand[.]' " *Reynolds,* 703 N.E.2d at 704 (citation omitted). Since Gonzalez does not specifically claim that his waiver was not "the product of a free will" or "the prod-

advise him of the jury's ability to find him not to be a habitual offender.

The United States Supreme Court has stated that "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and *likely* consequences." *Brady v. U.S.*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (addressing claim that petitioner's guilty plea was not voluntary) (emphasis added). In the years following *Brady*, our courts followed this standard to the letter in reviewing guilty pleas. *See, e.g., Brimhall v. State*, 258 Ind. 153, 162, 279 N.E.2d 557, 563 (1972) (waivers must be " 'intelligent acts done with sufficient awareness of the relevant circumstances and *likely* consequences' ") (quoting *Brady*) (emphasis added); *Henry v. State*, 175 Ind.App. 212, 216, 370 N.E.2d 972, 975 (1977) (same).

The first Indiana decision to rely on *Brady* with respect to jury trial waivers, however, employed the following language: "The waiver of any constitutionally protected right at the time of trial must be voluntary, knowing and intelligently made with sufficient awareness of the relevant circumstances surrounding its entry and its consequences." *Williams v. State*, 159 Ind.App. 470, 474, 307 N.E.2d 880, 883 (1974), *trans. denied.* Subsequent decisions of this court and our supreme court addressing jury trial waivers followed *Williams*' lead in omitting "likely" before the word "consequences." *See, e.g., Kindle v. State*, 161 Ind.App. 14, 21, 313 N.E.2d 721, 725 (1974) ("To be effective,

such waiver must be voluntarily, knowingly, and intelligently made with sufficient awareness of the relevant circumstances surrounding its entry and consequences."), *trans. denied* (citing, *inter alia, Brady* and *Williams*); *Perry v. State*, 401 N.E.2d 705, 707 (Ind.Ct.App.1980) ("It has also been said that such waiver must be voluntarily, knowingly, and intelligently made with sufficient awareness of the relevant circumstances surrounding its entry and its consequences.") (citing, *inter alia, Kindle*); *Doughty v. State*, 470 N.E.2d 69, 70 (Ind. 1984) ("A waiver of this right must be made in a knowing, intelligent, and voluntary manner, with sufficient awareness of the surrounding circumstances and consequences.") (citing *Perry*); *Brown v. State*, 495 N.E.2d 178, 179 (Ind.1986) ("However, trial by jury is subject to knowing and intelligent waiver by the defendant, provided the record demonstrates such waiver was made in a voluntary manner with sufficient awareness of the surrounding circumstances and the consequences.") (citing, *inter alia, Doughty*).

Given that the rights forfeited in guilty pleas and jury trial waivers are all constitutionally derived,[13] and that our supreme court has not specifically enunciated a more stringent standard for reviewing the waiver of rights derived from our state constitution, we conclude that a defendant who considers waiving his right to jury trial need only be informed of the *likely* consequences of his decision. Our conclusion is supported not only by the specific language of *Brady*, but also by practical considerations; if courts were required to

---

uct of a will that has the capacity to understand," we shall determine only whether his waiver was knowing.

13. *See Poore*, 681 N.E.2d at 208 (noting that a defendant who pleads guilty forfeits the right to confront accusers, the right to trial by jury, and the privilege against compulsory self-in-

crimination, all three of which are commonly known as *"Boykin* rights" after *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)). At the risk of stating the obvious, we note that the right to determine the law and the facts under Article I, Section 19 inheres to the jury, not the defendant.

inform defendants of every conceivable consequence of waiving the right to jury trial, the wheels of justice would grind to a proverbial halt. *See Reynolds,* 703 N.E.2d at 704 ("Reynolds' counsel did not have to explain each and every possible detail concerning a jury trial in order for the defendant to be sufficiently informed about the nature of a jury trial and the consequences of waiving his right to a jury trial."); *see also Kennedy v. State,* 271 Ind. 382, 387, 393 N.E.2d 139, 142 (1979) (noting that there is no "statutory or constitutional requirement that the trial judge explain to Defendant the difference between a trial by court and by jury; nor is there any requirement that the trial record demonstrate that Defendant understood the difference."), *cert. denied,* 444 U.S. 1047, 100 S.Ct. 737, 62 L.Ed.2d 734 (1980); *but see* ABA STANDARDS FOR CRIMINAL JUSTICE 15–1.2(b) (3d ed. 1996) ("The court should not accept a waiver [of trial by jury] unless the defendant, after being advised by the court of his or her right to trial by jury and the consequences of waiver of jury trial, personally waives the right to trial by jury in writing or in open court on the record.").

■ Gonzalez argues that since he was not informed of the possibility of jury nullification, he was not "fully informed as to the consequences of electing not to have a jury make [the habitual offender] determination." With respect to Article I, Section 19, our supreme court has stated that the jury's power to "sit along with the court as judges to honestly, justly, and impartially interpret and apply existing law ... does not include the right to create law or to reject law." *Holmes v. State,* 671 N.E.2d 841, 857 (Ind.1996) (citation omitted), *cert. denied,* 522 U.S. 849, 118 S.Ct. 137, 139 L.Ed.2d 85 (1997); *see also Bivins v. State,* 642 N.E.2d 928, 946 (Ind.1994) ("[A] jury is not bound to convict even in the face of proof of guilt beyond a reasonable doubt. However, it is improper for a court to instruct a jury that they have a right to disregard the law. Notwithstanding Article I, Section 19 of the Indiana Constitution, a jury has no more right to ignore the law than it has to ignore the facts in a case.") (citations and footnote omitted), *cert. denied,* 516 U.S. 1077, 116 S.Ct. 783, 133 L.Ed.2d 734 (1996).[14] Although a defendant who waives his right to jury trial

14. In *Beavers,* 236 Ind. at 562–63, 141 N.E.2d at 124, our supreme court enunciated the following principles in addressing the right of Indiana juries to decide both the law and the facts in criminal cases:

> The jury, as well as the court, is limited and controlled in the determination of the law, not only by the constitution, but also by the legislative enactments. It goes without argument that the jury has no more right than a court has to nullify a legally enacted constitutional statute. Juries are not above the constitution or the law, and should not be told that they are. The courts, which include both judges and juries, must give full recognition to the legislative branch of the government and its constitutional acts. The jury under its constitutional right to determine the law is restricted, controlled, and should be influenced by the equally important constitutional right of the legislature to make the laws. It has an oath and duty, just as a judge does, to observe and respect such coordinate rights set forth in the constitution. To tell the jury that it is not 'limited, restricted, controlled, or influenced, or hampered by the court or legislature' gives a warped interpretation to one of the provisions of our constitution, thereby permitting such a provision to override all others in the constitution.

In *Womack v. State,* 738 N.E.2d 320, 329 n. 6 (Ind.Ct.App.2000), *trans. denied* (2001), a panel of this court recognized that our supreme court's recent holdings in *Seay* and *Parker* "appear to conflict" with its pronouncements in *Beavers* and *Holmes* "by sanctioning jury nullification to a greater degree than previously[.]" Regardless of the accuracy of this observation, we cannot conclude that the degree of our supreme court's receptiveness to jury nullification would significantly affect its prevalence in habitual offender proceedings.

in a habitual offender proceeding would consequently forgo the *possibility* of jury nullification, in light of the above pronouncements we cannot conclude that nullification is so likely to occur that a defendant must be informed of this consequence before he can knowingly waive his right to jury trial.

There are no cases or statutes specifically enumerating the "likely consequences" of which a defendant must be informed before waiving his right to jury trial, and we are not called upon to do so here. In *Kelley v. State,* 543 N.E.2d 638, 639 (Ind.1989), our supreme court concluded that the trial court "was very thorough in its interrogation of appellant and in fully informing him of his rights and the consequences of the waiver of those rights":

> [The court] explained to appellant that if they proceeded with the jury trial a panel of impartial jurors would listen to the evidence and determine his guilt or innocence. He pointed out to appellant that even if one member of the jury believed he was not guilty, he would not be found guilty. He apprised appellant that if he waived a trial by jury, the judge, sitting alone, would listen to the evidence and determine his innocence or guilt. He also informed him that his trial on the theft charge and the question of his status as an habitual offender would be tried separately.

Although the trial court's "interrogation" in the instant case was not as extensive as that described in *Kelley,* Gonzalez does not claim that his waiver was unknowing with respect to the aforementioned consequences, including that "even if one member of the jury [found him not to be a

habitual offender], he would not be found [to be a habitual offender]." *See id.* Whether one or all of the jury members might have found him not to be a habitual offender because of insufficient evidence or via exercise of their nullification power is ultimately irrelevant for purposes of our discussion.[15]

In summary, we conclude that the trial court was not required to advise Gonzalez of the possibility of jury nullification and that he knowingly waived his right to jury trial on the habitual offender charge.

Affirmed.

KIRSCH and BAILEY, JJ., concur.

---

**15.** As for the "relevant circumstances" surrounding Gonzalez' waiver, which he does not address, we note that his previous felony convictions indicate more than a nodding acquaintance with the judicial process. More-

over, Gonzalez was represented by counsel and had just been convicted of aggravated battery by a jury that had been instructed regarding its role in determining the law and the facts.