Patricia O'CONNOR, Appellant–Defendant,

v.

STATE of Indiana, Appellee.

No. 49A02–0301–CR–7.

Court of Appeals of Indiana.

Oct. 9, 2003.

---

Dennis L. Thomas, Jr., Indianapolis, IN, Attorney for Appellant.

Steve Carter Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Following a bench trial, Patricia O'Connor was convicted of Forgery, a Class C felony,[1] and Theft, as a Class D felony.[2] O'Connor was also determined to be an habitual offender.[3] Upon appeal, O'Connor presents two issues for our review: (1) whether she knowingly, voluntarily, and intelligently waived her right to a jury trial on the underlying charges and as to the habitual offender determination, and (2) whether she received ineffective assistance of trial counsel.

We affirm in part and reverse in part and remand.

During the summer of 1999, while working in a secretarial capacity for McCammack Tile, Inc., O'Connor forged a check to herself in the amount of $1,280.00 out of the corporation's account. On January 19, 2000, the State filed an information charging O'Connor with one count of forgery and one count of theft. An initial hearing was held on January 26, 2000, at which time the trial court set the initial omnibus date as March 26, 2000, a pre-trial conference for March 29, 2000, and a jury trial for April 6, 2000. At the pre-trial conference on March 29, O'Connor orally waived her right to a jury trial and also submitted to the court a form which she had signed waiving her right to a trial by jury. The State also requested that thirty days be added to the omnibus date, to which O'Connor's counsel did not object.[4] The trial court then set the new omnibus date as May 3, 2000. On May 12, 2000, the State filed an information alleging O'Connor to be an habitual offender.

On August 4, 2000, a bench trial was conducted, at the conclusion of which the trial court found O'Connor guilty as charged. During the habitual offender phase of the trial, O'Connor stipulated to the evidence which the State presented in support of the habitual offender information.[5] The trial court then found O'Connor

1. Ind.Code § 35–43–5–2 (Burns Code Ed. Repl.1998).

2. Ind.Code § 35–43–4–2 (Burns Code Ed. Repl.1998).

3. Ind.Code § 35–50–2–8 (Burns Code Ed. Supp.2003).

4. As of the pre-trial conference on March 29, the initial omnibus date had already expired. Indeed, the State had ten days from the original omnibus date of March 26 within which to file an habitual offender information against O'Connor. *See* Ind.Code § 35–34–1–5(e) (Burns Code Ed. Repl.1998). Thus, the

State had until April 5, 2000, or one week from the date of the pre-trial conference, to file the habitual offender information. The State requested that thirty days be added to the omnibus date so that there would be additional time to "work it out" with O'Connor before the State filed the habitual offender information. Exhibit A at 4. O'Connor's counsel did not object, asserting that she needed time for depositions and further indicating that "the case might be worked out." *Id.*

5. The State presented certified records which established that O'Connor was convicted of forgery as a Class C felony in 1992 and of two

to be an habitual offender. On September 7, 2000, the trial court sentenced O'Connor to an aggregate sentence of eighteen years imprisonment, eight years for the forgery conviction, enhanced by ten years for the habitual offender determination, and three years for the theft conviction, with the sentences to run concurrently.

■ On June 20, 2002, O'Connor filed a petition for permission to file a belated motion to correct error, which the trial court granted on July 29, 2002. *See* Ind. Post–Conviction Rule 2(2). A hearing on O'Connor's belated motion to correct error was held on November 20, 2002, at the conclusion of which the court denied O'Connor's motion. It is from the denial of her belated motion to correct error which O'Connor now appeals. When ruling on a motion to correct error, the trial court sits as the initial fact finder upon the issues presented, and we review the trial court's determination for an abuse of discretion. *Booher v. State,* 773 N.E.2d 814, 817 (Ind.2002); *Martin v. State,* 784 N.E.2d 997, 1009 (Ind.Ct.App.2003), *reh'g denied.*

O'Connor argues that she did not knowingly, voluntarily, and intelligently waive her right to a jury trial. Specifically, O'Connor asserts that her convictions should be set aside because she did not make a "comprehensive" voluntary, knowing, and intelligent waiver of her right to a jury trial because at the time she had not been informed of the maximum sentence which could be imposed if the State subsequently filed an habitual offender information. Appellant's Brief at 14. O'Connor further argues that, at a minimum, the trial court's determination that she is an

habitual offender should be vacated, asserting that she did not waive her right to a jury trial as to the habitual offender determination inasmuch as the State had not filed the habitual offender information when she waived her right to a jury trial upon the underlying charges.

■ The United States and Indiana Constitutions [6] guarantee the right to trial by jury. *See Poore v. State,* 681 N.E.2d 204, 206 (Ind.1997); *Gonzalez v. State,* 757 N.E.2d 202, 204 (Ind.Ct.App.2001), *trans. denied.* This right also applies to habitual offender proceedings. *Dixie v. State,* 726 N.E.2d 257, 259 (Ind.2000). *See also* Ind. Code § 35–50–2–8 (Burns Code Ed. Supp. 2003). While the right to have the jury act as a trier of fact with regard to a defendant's habitual offender status is a matter of statutory law, *see Dyer v. State,* 460 N.E.2d 511, 512 (Ind.1984), it has been held that "the [statutory and constitutional] safeguards and precautions attendant to the waiver of a jury trial apply to waiver of the habitual offender jury hearing." *Snyder v. State,* 654 N.E.2d 15, 19 (Ind.Ct. App.1995), *summarily aff'd, except as to remedy ordered by Snyder v. State,* 668 N.E.2d 1214, 1216 (Ind.1996).

■ A person charged with a felony has an automatic right to a jury trial. *Poore,* 681 N.E.2d at 207. We will presume that a defendant did not waive this right unless he affirmatively acts to do so. *Id.* To constitute a valid waiver of the right to a jury trial, the defendant's waiver " 'must be voluntary, knowing and intelligently made with sufficient awareness of the relevant circumstances surrounding its entry and its consequences.' " *Gonzalez,* 757 N.E.2d at 206 (quoting *Williams v.*

counts of forgery as Class C felonies and one count of theft as a Class D felony in 1995.

**6.** U.S. Const. Amend. VI (guaranteeing "the right to a speedy and public trial, by an im-

partial jury" in all criminal prosecutions); Ind. Const. Art. 1, § 13 (guaranteeing the right to "a public trial, by an impartial jury," in all criminal prosecutions).

*State,* 159 Ind.App. 470, 474, 307 N.E.2d 880, 883 (1974), *trans. denied* ). *See also Doughty v. State,* 470 N.E.2d 69, 70 (Ind. 1984). The defendant must express her personal desire to waive a jury trial and such a personal desire must be apparent from the court's record, whether in the form of a written waiver or a colloquy in open court. *Gonzalez,* 757 N.E.2d at 205.

[8] Here, at the beginning of the pre-trial conference conducted on March 29, 2000, the following colloquy between the trial court and O'Connor ensued:

> "THE COURT: ... And, Ms. O'Connor, your attorney's [sic] indicated that you wish to waive trial by jury; is that right?
>
> DEFENDANT: Yes, ma'am.
>
> THE COURT: And you understand that you do have the right to have your case heard by 12 men and women sitting over there in the jury box?
>
> DEFENDANT: Yes, ma'am.
>
> THE COURT: And you understand that by waiving that right that the Court alone will hear it?
>
> DEFENDANT: Yes, ma'am.
>
> THE COURT: And that's what you wish to do?
>
> DEFENDANT: Yes, ma'am." Exhibit A at 2.

In addition to orally waiving her right to a jury trial, O'Connor signed and submitted to the trial court a written waiver of trial by jury. From the record it is clear that O'Connor knowingly, voluntarily, and intelligently waived her right to a jury trial on the underlying charges. That the habitual offender information was later filed does not alter this conclusion.

■ However, that same fact, that the habitual offender information had not yet been filed when O'Connor waived her right to a jury trial, does affect our decision regarding whether O'Connor waived her right to a jury trial as to the habitual offender determination. O'Connor asserts that her habitual offender determination should be set aside because in waiving her right to a jury trial on the underlying charges, she could not have waived her right to a jury trial as to an habitual offender determination because the State had yet to file an information alleging that she was an habitual offender.

The State argues that while the habitual offender information was not filed until well after O'Connor waived her right to a jury trial upon the underlying charges, O'Connor "knew full well at the time that she waived jury trial that the State would file the habitual count if she did not accept the plea offer." Appellee's Brief at 6. The State thus argues that O'Connor's waiver of her right to a jury trial not only waived her right to a jury trial upon the underlying charges, but also as to allegations set forth in the habitual offender information which was later filed. In support of its argument, the State directs us to O'Connor's trial counsel's testimony wherein she indicated that she discussed with O'Connor the scenario in which the State may file an habitual offender information, the pre-trial memorandum wherein the State's plea offer indicated that it would not file an habitual offender information if O'Connor pleaded guilty, and an on-the-record discussion at the pre-trial conference about extension of the omnibus date for purposes of trying to "work it out" before filing an habitual offender information against O'Connor.

Although O'Connor's trial counsel testified that she "probably" informed O'Connor of the possibility of the State filing an habitual offender information during one of her first meetings with O'Connor, the fact remains that when O'Connor waived her right to a jury trial, the State had not filed the habitual offender information

against her. Further, we cannot say that the pre-trial conference memorandum, which contained the State's plea offer indicating that if O'Connor pleaded guilty as charged to forgery, the State would not file the habitual offender information, and any discussion between O'Connor and her trial counsel to that effect, made O'Connor sufficiently aware that her waiver of a jury trial as to the underlying charges was also a knowing, voluntary, and intelligent waiver of her right to a jury trial as to her status as an habitual offender. As to the discussion at the pre-trial conference about the extension of the omnibus date and the possibility of the State filing the habitual offender information, such occurred *after* O'Connor waived her right to a jury trial and thus is not pertinent to whether O'Connor's prior waiver of a jury trial was a knowing and intelligent waiver of her right to a jury trial with regard to her habitual offender status.

Even though O'Connor knowingly, voluntarily, and intelligently waived her right to a jury trial upon the underlying charges, we fail to see how O'Connor's waiver was effective as to an habitual offender information which had yet to be filed. The record reveals that O'Connor was never advised of her right to a jury trial as to the habitual offender determination and that at no time after the State filed the habitual offender information did she waive her right to such. O'Connor's waiver of her right to a jury trial was not made with sufficient awareness of the relevant circumstances surrounding its entry and its consequences so as to be deemed a voluntary, knowing, and intelligent waiver of her right to a jury trial as to the habitual offender determination. Therefore, we reverse the trial court's habitual offender determination, vacate the sentence imposed thereon, and remand to the trial court for proceedings not inconsistent with this opinion.

O'Connor also asserts that she received ineffective assistance of trial counsel and thus requests that we vacate her convictions. The crux of O'Connor's ineffective assistance claim is that she was prejudiced by her counsel's performance in that, had her counsel properly advised her as to the possibility of an enhanced punishment upon an habitual offender determination, she would have accepted the original plea offer communicated to her by her counsel, wherein the State offered six years, one-third of the sentence which O'Connor eventually received.

To prevail upon a claim of ineffective assistance of counsel, O'Connor must present strong and convincing evidence to overcome the presumption that her trial counsel's representation was appropriate. *See Allen v. State*, 743 N.E.2d 1222, 1234 (Ind.Ct.App.2001), *trans. denied.* O'Connor must show that her trial counsel's representation was deficient in that it fell below an objective standard of reasonableness and that she was prejudiced by such deficiency so that she was denied a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Allen*, 743 N.E.2d at 1234. To establish prejudice, O'Connor must show that there is a reasonable probability that, but for counsel's performance, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694, 104 S.Ct. 2052; *Allen*, 743 N.E.2d at 1234. Our Supreme Court has stated that, " 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed.' " *Williams v. State*, 706 N.E.2d 149, 154 (Ind.1999) (quoting *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052), *cert. denied*, 529 U.S. 1113, 120 S.Ct. 1970, 146 L.Ed.2d 800 (2000).

■■■ O'Connor first argues that her trial counsel provided ineffective representa-

tion because she did not adequately communicate with her about the possibility of the State filing an habitual offender information and the ramifications thereof prior to her rejecting the State's plea offer. O'Connor further argues that her trial counsel was ineffective because she failed to inform her prior to trial that the State had in fact filed an habitual offender information. The record indicates that O'Connor's trial counsel met with her on two occasions prior to the pre-trial conference. O'Connor's counsel testified that she "probably" advised O'Connor of the possibility of the State filing the habitual offender information after reviewing her criminal history and that she would have so advised O'Connor prior to the pre-trial conference. At the pre-trial conference, the State presented O'Connor's counsel with the pre-trial conference memorandum, wherein the State set forth in its offer that in exchange for a plea of guilty to forgery, the State would not file an habitual offender information. O'Connor's counsel testified that she discussed the plea offer with O'Connor, but that from the beginning of the case until the end of the case, O'Connor refused to plead guilty because she wanted a trial. O'Connor's self-serving statement, i.e. that had her trial counsel informed her about the habitual offender information and the potential for an enhanced punishment, she would have accepted the State's plea offer, does not convince us that O'Connor's trial counsel's representation was ineffective.[7]

O'Connor also argues that her trial counsel was ineffective because she did not object to the State's request that thirty days be added to the omnibus date, thereby giving the State additional time within which to file an habitual offender information. O'Connor, however, does not explain how she was prejudiced by such extension. O'Connor does not claim that had her trial counsel objected to the extension of the omnibus date and had the trial court refused to grant such extension, that the State would not have had sufficient time to file the habitual offender information. Indeed, as of the date of the pre-trial conference, the State still had seven days to file an habitual offender information even if no new omnibus date had been set. Further, in requesting that thirty days be added to the omnibus date, the State indicated that the reason for its request was because it hoped to work something out with O'Connor before it was required to file the habitual offender information. As to the manner in which O'Connor's counsel handled the State's request, she indicated that she did not object to the extension of the omnibus date because she wanted to conduct further investigation and she too hoped that an agreement in O'Connor's best interests would be worked out with the State. O'Connor has not demonstrated that she was prejudiced by her counsel's decision to not object to the extension of the omnibus date.

O'Connor also argues that her trial counsel was ineffective because her trial counsel stipulated to flawed information during the habitual offender phase of the trial. However, because we have already concluded that the habitual offender determination should be vacated, we need not address whether counsel was ineffective for stipulating to the State's evidence during the habitual offender phase of the trial. In summary, O'Connor has not presented

---

**7.** We have concluded that the fact that O'Connor's trial counsel informed her of the possibility that the State would file an habitual offender and further discussed the State's plea offer with O'Connor was not sufficient to establish that O'Connor waived her right to a jury trial with regard to the habitual offender determination. Such does not necessarily mean that O'Connor's trial counsel provided ineffective representation.

strong and convincing evidence to overcome the presumption that her trial counsel's representation was appropriate.

The judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded for proceedings not inconsistent with this opinion.

FRIEDLANDER and RILEY, JJ., concur.