**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case**.



ATTORNEY FOR APPELLANT:

**VALERIE K. BOOTS**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

TRAVIS SMITH,                                )
                                             )
    Appellant-Defendant,                     )
                                             )
        vs.                               )    No. 49A05-1307-CR-316
                                             )
STATE OF INDIANA,                            )
                                             )
    Appellee-Plaintiff.                      )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Grant W. Hawkins, Judge
Cause No. 49G05-1201-FB-5928

**February 17, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Travis Smith appeals his convictions for failure to stop after an accident resulting in serious bodily injury while intoxicated as a class B felony and failure to stop after an accident resulting in damage to property other than a vehicle as a class B misdemeanor and his enhancement for being an habitual offender. Smith raises four issues which we revise and restate as:

I.  Whether the admission of hearsay evidence constituted fundamental error;

II.  Whether the prosecutor committed prosecutorial misconduct that resulted in fundamental error;

III.  Whether the court's admonishments that the jury could discuss the testimony it had heard for the purpose of making sure that each juror heard the same thing constituted fundamental error; and

IV.  Whether Smith knowingly, voluntarily, and intelligently waived his right to a jury trial on the habitual offender charge.

We affirm in part, reverse in part, and remand.

FACTS AND PROCEDURAL HISTORY

On the morning of January 26, 2012, Bradley Amiano had just returned from a run and was taking out his trash on 13th Street in Indianapolis. A 1992 GMC 1500 pickup truck "kind of blew right past" him and was going well over the speed limit. Transcript at 68. Amiano was able to see inside the truck. The driver was wearing a brown jacket similar to "a big construction type jacket, like a Carhartt type brand." Id. Seconds after Smith saw the individuals in the truck, the truck failed to stop for a stop sign and collided with a red Jeep Grand Cherokee that did not have a stop sign and was driven by Raul Godinez with Godinez's one-year-old son as a passenger. The truck "pretty much T-boned" Godinez's vehicle. Id. at 140. The impact was so great that it caused the vehicles

2

to spin out of control and end up on top of a porch. Godinez's son suffered a fractured skull as a result of the crash.

Amiano went inside, grabbed his cell phone, immediately went back outside, and called 911. At that time, the person who was sitting in the driver's seat opened the door, "kind of stumbled out," and started walking or jogging. Id. at 70. Amiano relayed the driver's actions to the 911 operator.

Indianapolis Metropolitan Police Sergeant Jack Simpson responded to the dispatch regarding a hit and run accident with injury and the description of the subject of a "black male in a carthardt [sic] jacket and grey pants" running southbound through the houses from 13th and Euclid. Id. at 85. Sergeant Simpson went north and approximately three blocks from the scene of the collision observed a black male with grey pants and a Carhartt jacket which matched the description given by the police dispatch. Sergeant Simpson told the person, later identified as Smith, to stop and observed that Smith had blood dripping down all over his face. Smith had a phone to his ear, but Sergeant Simpson could not tell if he was really talking on the phone. Sergeant Simpson called for an ambulance and asked Smith if he had been in an accident, to which Smith responded that he was not driving.

Meanwhile, police discovered Tywan Baker, who had broken his femur, and was trapped in the passenger seat of the truck, and Cody Smith ("Cody"), Smith's brother, in the center seat and "pretty close to where [Baker] was sitting." Id. at 276. Cody was "wedged in there pretty good," and he had to use both of his hands to pull himself from the middle seat to exit out of the driver's side door. Id.

3

Indianapolis Metropolitan Police Officer Scott Emminger arrived at the scene and observed that Smith had an odor of an alcoholic beverage about his person, he had glassy and bloodshot eyes, his speech was discernibly slurred, and he was "kind of staggering." Id. at 108. When Officer Emminger asked him to produce an identification card or a driver's license, Smith attempted to retrieve his wallet from his pocket but failed. Officer Emminger asked to retrieve the wallet, and Smith allowed him to do so. An ambulance transported Smith to Wishard Hospital where he was treated and his blood was drawn. A forensic scientist later determined that the "Alcohol Concentration Equivalent in [Smith] was .19 gram/100 milliliters of his blood (0.19% w/v)(190 mg/DL)." State's Exhibit 5.

On January 30, 2012, the State charged Smith with Count I, failure to stop after an accident resulting in serious bodily injury while intoxicated as a class B felony; Count II, operating a motor vehicle while intoxicated causing serious bodily injury as a class D felony; Count III, operating a motor vehicle with a BAC of .08 or more causing serious bodily injury as a class D felony; and Count IV, failure to stop after an accident resulting in damage to property other than a vehicle as a class B misdemeanor. The State also alleged that Counts II and III were enhanced to class C felonies based upon Smith's prior convictions. On February 28, 2012, the State filed a notice of intent to file an habitual offender enhancement. On May 30, 2012, the State alleged that Smith was an habitual offender. On June 3, 2013, the State filed an amended information related to the habitual offender allegation.

Meanwhile, in April 2012, Lieutenant Waterman of the Marion County Sheriff's Department intercepted certain correspondence consisting of an envelope addressed to

4

Smith's mother and containing a letter to Cody and a smaller stamped envelope which read on the back "Send this to Cody ASAP!" State's Exhibit 27(C). The letter dated April 17, 2012, and addressed to Cody, stated in part:

> Right on, I needed to know what went on to help me to let my lawyer know what your statement is going to be. You know what I need you to tell the lawyer when he does a deposition on you. Story: When the police got to the scene, he ask if you and Ty were hurt. You told him I was hurt and you were trying to help him to move and his body weight dropped on you. The medical people lifted Ty so you could get out. As you were scooting to the door the police officer pulled you aggressively out the truck and threw you on the ground on the wet grass and mud. Some woman yelled, no no, another guy got out the truck, I think he was the driver. So the officer asked you whose truck is this, and you said my brother's. The officer said what's your brother's name and you said, I don't know why he slammed me on the ground and put me in cuffs when I hadn't done anything. The officer said because he thought you were the driver. Then they searched you and found the Grey Goose bottle and the beer, all unopened. The officer said that he could lock you up for the alcohol. The officer didn't give you a breath test because he knew you were not drunk, but he was trying to find a reason to lock anybody up. . . . Cody, you have to fill in the blanks after that. If they ask you in the deposition why you didn't say that you were driver of the truck. The police were being aggressive and mean. They believed what they heard the woman say. It's at that point once they started running my brother's information that all the police officers could focus on. They had my brother's driver's license and they were running his license plates. My only focus was on getting to the hospital to make sure that my brother was okay. I don't tell the police anything, anything because they lie and twist your story around. Also my brother told me not to say anything, but I can't let him sit in jail or go to prison because of lies, when he was looking out for his brother by not saying anything and going to get help. Cody, make it do what it do, and be ready for they tricks they try to pull. . . . If they get in touch with Ty and get a statement he should be on the same thing. He was getting a ride from you. I was in the middle and hit my head on the rear view mirror.

Transcript at 302-304.

On June 3, 2013, a two-day jury trial began. At trial, Amiano identified the person that he saw exiting from the driver's seat as the same person who was driving the truck

5

when the crash occurred and the same person that the police apprehended.  Amiano also testified that he did not observe the person that exited the truck climb over anyone to get out.  He testified that the passenger in the middle seat was wearing a black jacket and red pants.  On recross-examination, Amiano stated that it took him "[m]aybe 30 seconds" to go in his house, grab his cell phone, and walk out the front door.  Id. at 81.  Officer Emminger testified that the person in the middle of the truck stated that his brother was driving the truck, but when asked for his brother's name, the person said, "I forgot."  Id. at 111.

Before taking a break, the court gave the following admonishment without objection:

> Please remember the admonition I told you I'd be giving you.  You may discuss the testimony you've heard among yourselves in the juryroom only and for the sole purpose of making sure you heard the same thing.  Don't decide whether you believe or don't believe something.  Don't decide that something has been proven or not proven.  Simply decide whether or not you've heard the same thing.  Don't form or express any opinion about this case until you've heard all the evidence, all the arguments and all of the instructions.

Id. at 125-126.  At a later point before another break, the court stated without objection:

> Please remember the admonition I've given you previously.  You can discuss the testimony among yourselves for the purpose of making sure you've heard the same thing.  Don't form or express any opinion about what has been proven or not proven, who to believe or not to believe until you've heard all the evidence, all the argument, all the instructions.

Id. at 171-172.  Before another recess, the court stated without objection: "You can discuss the testimony among yourselves to make sure you've all heard the same thing."

Id. at 196.  The court later gave three similar admonishments prior to breaks.

6

After the prosecutor indicated that the State had no further witnesses, Smith moved for a directed verdict, and the trial court denied the motion. Baker testified that he was 6'2" and weighed 240 pounds and was sitting by the door, that Cody was driving, and Smith was sitting in the middle. Cody testified that he was driving the truck at the time of the accident and that Smith was wearing a sparkly diamond encrusted jacket. On cross-examination, Cody testified that he had indicated in an earlier statement that Smith was wearing a brown coat. Smith testified that he was in the middle seat, Cody was driving, and that Baker was on the passenger side. Smith also testified that his head hit the rearview mirror and that he received injuries to his head as a result of the accident. Smith stated that he was between 6'1" and 6'2" and weighed between 220 and 230 pounds and that he was able to crawl over Cody who he estimated to be 5'10" and between 170 and 180 pounds.

During rebuttal, Indianapolis Metropolitan Police Officer Tracy Ryan testified that Cody was sitting in the center seat, was "wedged in there pretty good," and "had to use both of his hands to pull himself from the middle seat to get out of the driver's side door." Id. at 276. Officer Ryan also testified that she recalled that Cody was wearing a red jacket but did not recall what color pants he was wearing. Indianapolis Metropolitan Police Detective Eric Snow testified as a rebuttal witness that he investigates hit and run accidents and is a reconstructionist or examines accidents to determine how they occur. Detective Snow took photographs of the scene and the vehicles and had the chance to fully observe the damage to the vehicles. The following exchange occurred during direct examination of Detective Snow:

7

Q.      And officer were the injuries that Travis Smith described consistent with your examination of that scene, in your opinion?

A.      In my opinion if he stated he was sitting in the center and he hit the rear view mirror it's impossible.

Q.      Why do you say that?

A.      By the force of impact.

* * * * *

Q.      So you're saying as the individuals sit in that bucket seat . . .

A.      Yeah, if he was sitting in the back bucket seat after the impact he would not come straight on to where the rear view mirror is.  He would have hit his head over here somewhere.

Q.      So what does that indicate to you where you see there does appear to be a rather significant impact in the center of that front windshield in that truck.  Which individual do you believe would cause that impact?

A.      That would be whoever was driving the vehicle.

Q.      The person in the driver's seat?

A.      Yes.

Id. at 308-309.  On surrebuttal, Smith testified that he wrote the letter to Cody "to get Cody to come forth and let them know what it was that really happened." Id. at 313.

During closing argument, the prosecutor stated, without objection, that Cody, Baker, and Smith were lying and that the jury could ignore their testimony.  After closing argument and while the jury was deliberating, the court had a discussion with the attorneys and stated: "You are going to reach an agreement, but if he's convicted of count 1 he'll get less than the full 30 years because he'll admit to being a habitual offender.  I want to take the guilty plea while the jury is still out." Id. at 337-338.  The court later

8

stated: "Let me know if you reach an agreement and I can take the factual basis on whatever you agree to number 1." Id. at 339. After the jury indicated that it had reached a verdict, the court asked the attorneys if they had reached a decision regarding the second phase of the trial and the following exchange occurred:

[Defense Counsel]: I have relayed the offers that the State has made on any potential enhancement compromise and he says if he is convicted of count 1 or count 2 or 3 that he is admitting – he is willing to admit that he does have the prior convictions. There are 3 prior convictions alleged.

THE COURT: There are only 2; 2 for the habitual and 1 for count 3. The State filed an amended information yesterday.

[Defense Counsel]: But he is admitting basically all 3 convictions. He is agreeing that those are accurate.

Id. at 352-353. Smith then admitted that he had the prior convictions alleged in the amended habitual offender information. The prosecutor then offered State's Exhibits 14 through 19 "just to be sure" and "[s]o there is no confusion." Id. at 358. The court admitted State's Exhibits 14 through 19 which consist of documents including charging informations and abstracts of judgment related to the prior convictions. The court then stated: "So if there is a conviction on count 1 we'll find that the habitual offender enhancement is proven by admission." Id. at 358-359. The parties then discussed the prior conviction related to Count III, and Smith admitted that he had such a conviction.

The jury found Smith guilty of Count I, failure to stop after an accident resulting in serious bodily injury while intoxicated as a class B felony; Count II, operating a motor vehicle while intoxicated causing serious bodily injury as a class D felony; Count III, operating a motor vehicle with a BAC of .08 or more causing serious bodily injury as a

9

class D felony; and Count IV, failure to stop after an accident resulting in damage to property other than a vehicle as a class B misdemeanor.

At the beginning of the sentencing hearing, the court summarized the situation in part by stating "Mr. Smith was found guilty of all counts and admitted the enhancement that makes the D felonies, C felonies. Further, he admitted that he was an habitual offender, which satisfies Count VII." Id. at 369. The prosecutor stated that Count I encompassed Counts II and III and their enhancements and moved to dismiss them, and the court granted the motion.

The court sentenced Smith to fifteen years for Count I with five years suspended and enhanced the sentence by twenty years, and to a concurrent one year for Count IV for an aggregate sentence of thirty-five years with five years suspended.

DISCUSSION

I.

The first issue is whether the admission of hearsay evidence constituted fundamental error. We review the trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. Roche v. State, 690 N.E.2d 1115, 1134 (Ind. 1997), reh'g denied. We reverse only where the decision is clearly against the logic and effect of the facts and circumstances. Joyner v. State, 678 N.E.2d 386, 390 (Ind. 1997), reh'g denied. Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. Fox v. State, 717 N.E.2d 957, 966 (Ind. Ct. App. 1999), reh'g denied, trans. denied.

10

As Smith recognizes, he did not object to Officer Emminger's testimony regarding what Cody stated at the scene. To avoid waiver, Smith attempts to invoke the fundamental error doctrine. Generally, failure to object to the admission of evidence at trial normally results in waiver and precludes appellate review unless its admission constitutes fundamental error. Brown v. State, 929 N.E.2d 204, 207 (Ind. 2010), reh'g denied; Cutter v. State, 725 N.E.2d 401, 406 (Ind. 2000), reh'g denied. Fundamental error is an extremely narrow exception that allows a defendant to avoid waiver of an issue. Cooper v. State, 854 N.E.2d 831, 835 (Ind. 2006). It is error that makes "a fair trial impossible or constitute[s] clearly blatant violations of basic and elementary principles of due process . . . present[ing] an undeniable and substantial potential for harm." Id. "This exception is available only in 'egregious circumstances.'" Brown v. State, 929 N.E.2d 204, 207 (Ind. 2010) (quoting Brown v. State, 799 N.E.2d 1064, 1068 (Ind. 2003)).

Smith argues that Cody's statement recounted by Officer Emminger, specifically that Cody's brother was the driver of the truck, was hearsay and should not have been admitted. Smith appears to argue that the admission of the statement was fundamental error because there was a great dispute as to whether it was he or Cody driving the truck, the reliability of Amiano's perceptions of the crash and his memory were vigorously challenged during cross-examination, and the statement was tremendously prejudicial to Smith. The State argues that Cody's statement was not inadmissible hearsay because it fell under the excited utterance exception and that even if the statement constituted inadmissible hearsay, any error in its admission was not fundamental error.

11

Even assuming that Cody's statement as testified to by Officer Emminger constituted inadmissible hearsay, we cannot say that fundamental error occurred. Amiano testified that he was eight to ten feet away from the pickup truck and that he was able to see inside the vehicle. Amiano also identified the person that he saw exiting the driver's seat as the same person who was driving the truck when the crash occurred. Sergeant Simpson discovered Smith approximately three blocks from the scene of the collision wearing a jacket described by Amiano and with blood all over his face. Officer Ryan testified that Cody was sitting in the center seat, was "wedged in there pretty good," and "had to use both of his hands to pull himself from the middle seat to get out of the driver's side door." Transcript at 276. Further, Detective Snow, a reconstructionist, testified that it would have been impossible for Smith to sustain his injuries if he had been sitting in the center seat. Based upon the evidence that Smith was the driver of the truck, the claimed error did not make a fair trial impossible, nor was its harm or potential harm substantial. Accordingly, we cannot say that reversal is warranted on this basis.

II.

The next issue is whether the prosecutor committed prosecutorial misconduct that resulted in fundamental error. In reviewing a properly preserved claim of prosecutorial misconduct, we determine: (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected. Cooper, 854 N.E.2d at 835. Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct. Id. The gravity of peril is

12

measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. Id.

When an improper argument is alleged to have been made, the correct procedure is to request the trial court to admonish the jury. Id. If the party is not satisfied with the admonishment, then he should move for mistrial. Id. Failure to request an admonishment or to move for mistrial results in waiver. Id.

Where, as here, a claim of prosecutorial misconduct has not been properly preserved, our standard of review is different from that of a properly preserved claim. Id. More specifically, the defendant must establish not only the grounds for the misconduct, but also the additional grounds for fundamental error. Id.

Smith points to the following emphasized comments made by the prosecutor during closing argument:

> You are going to be instructed by the Judge that under Indiana Law that your job as jurors when there is a conflict between sworn statements to decide who is telling the truth, who is not, who to believe and who not to believe. *And you can absolutely ignore someone's testimony.*
>
> * * * * *
>
> *Cody and [Baker's] testimony you can ignore it.* There is a conflict. *You have the right as jurors to ignore it if you believe it does not hold truth, and it does not hold truth.* It is [Smith's] story to protect himself. It is [Smith's] story that you get him out of this seat, and *it's a lie.*
>
> * * * * *
>
> *We know that the story given to you by the defense is wrong.* That leaves us with Bradley Amiano, leaves us with a man who is taking out the trash after a run. . . . You heard him talking to 9-1-1. You have no reason not to believe that. It is not a story, *it is the truth.* And *that truth makes [Smith] guilty of this crime.*

Transcript at 320, 323, 325 (emphases added). Smith also directs our attention to the following emphasized portions of the comments made by the prosecutor during rebuttal argument:

> Travis Smith was driving, *to be honest*. He was seen in the driver's seat. He was seen getting out of the driver's seat. He was seen moments before and after the crash. By his own admission he was playing with the radio, ran a stop sign, plowed into a red Jeep Grand Cherokee and crashed and fractured the skull of a 1 1/2 year old child. *So they had to change the truth to this story*. Tweaked a little bit here, they had come from the liquor store and had gone to [Smith's] wife's house. They were going to his dad's house. They just flipped who was driving. They want you to believe that Cody was driving, *it's not true*. Cody, [Baker] and [Smith] are not believable. And in instruction number 10 that you got this morning it indicated in weighing the testimony to determine what or whom you will believe, you should use your own knowledge, experience and common sense gained from day to day living. The number of witnesses who testified to a particular fact, or the quantity of evidence on a particular point need not control your determination of the truth. Don't believe them, *they are lying to you. And ignore what they tell you. The law allows you, orders you to make that determination and ignore what they told you*. And find *the truth*, that [Smith] operated that vehicle, caused the crash, injured the child and fled away because he knew he would be in trouble. *That's the truth, find the truth*.

Id. at 334-335 (emphases added).

Smith argues that the prosecutor improperly commented on the truthfulness of Amiano and the lack of truthfulness of Smith, Baker, and Cody. In support, Smith cites Ind. Professional Conduct Rule 3.4(e), which states:

> A lawyer shall not . . . in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused . . . .

The State argues that the prosecutor's comments regarding the truthfulness of Amiano and the lack of truthfulness of defense witnesses arose from the evidence and that at no time did the prosecutor insinuate in any way that he was in possession of superior knowledge.

Smith next argues that the prosecutor misled the jury as to its duty in evaluating the evidence by indicating that it could ignore certain testimony. Smith points to Indiana's Criminal Pattern Jury Instruction No. 1.17 which states in part:

> You should not disregard the testimony of any witness without a reason and without careful consideration. If you find conflicting testimony, you may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness said, or only part of it, or none of it.

The State argues that the language used by the prosecutor "while perhaps inartful, did not mislead the jury into thinking they could ignore testimony for no reason." Appellee's Brief at 12. The State contends that the prosecutor was informing the jury that it had the authority to disregard or ignore testimony they found to be incredible. The State also points out that the jury was instructed on this issue.

Smith also contends that the prosecutor improperly elicited the highly prejudicial hearsay of Cody's statement during the direct examination of Officer Emminger and again points to Ind. Professional Conduct Rule 3.4(e). The State argues that Cody's statement was an excited utterance and was admissible and that, even if the admission of the statement is deemed error, the prosecutor's simple elicitation of that testimony falls well short of that necessary to constitute prosecutorial misconduct, let alone fundamental error.

15

Finally, Smith contends that the cumulative effect of the prosecutor's misconduct impacted his substantial rights and was not harmless. The State argues that none of the challenged acts by the prosecutor constitute misconduct at all, let alone fundamental error.

To the extent that Smith challenges the prosecutor's statements regarding Amiano's truthfulness, the lack of truthfulness of Smith, Baker, and Cody, and that the jury could ignore certain testimony, we observe that the Indiana Supreme Court has held that a prosecutor does not necessarily engage in misconduct by characterizing a defendant as a liar. Cooper, 854 N.E.2d at 836. Rather, "a prosecutor may comment on the credibility of the witnesses as long as the assertions are based on reasons which arise from the evidence." Id.

In Hobson v. State, 675 N.E.2d 1090, 1095-1096 (Ind. 1996), the Indiana Supreme Court discussed a claim of fundamental error involving the prosecutor's personal opinions as to the truthfulness of witnesses. Specifically, the "prosecutor gave personal opinions as to the truthfulness of witnesses" when the prosecutor stated to the jury during closing arguments, "I warned you that [the defendants] are liars." 675 N.E.2d at 1095. The Court held that "[a] prosecutor, in final arguments, can 'state and discuss the evidence and reasonable inferences derivable therefrom so long as there is no implication of personal knowledge that is independent of the evidence.'" Id. at 1096 (quoting Kappos v. State, 577 N.E.2d 974, 977 (Ind. Ct. App. 1991), trans. denied). The Court held that the prosecutor's comments merely pointed out the incongruities in the testimony, concluded that someone must not be testifying truthfully, and invited the jury

16

to determine who was telling the truth, an activity properly within a jury's domain. Id. The Court concluded that no error occurred. Id.

There was ample evidence indicating that Smith was the driver of the pickup truck. The prosecutor was permitted to argue that Smith, Cody, and Baker were not offering truthful testimony. While some comments may have been improper, the jury received instructions that it had the right to determine what had and what had not been proven and that it was the exclusive judge of the evidence, the credibility of the witnesses, and the weight to be given to the testimony. The court gave the following instruction:

> You should not disregard the testimony of any witness without a reason and without careful consideration. If you find conflicting testimony you may determine which of the witnesses you will believe and which of them you will disbelieve.
>
> In weighing the testimony to determine what or whom you will believe, you should use your own knowledge, experience and common sense gained from day to day living. The number of witnesses who testify to a particular fact, or the quantity of evidence on a particular point need not control your determination of the truth. You should give the greatest weight to that evidence which convinces you most strongly of its truthfulness.

Appellant's Appendix at 135. The court instructed the jury that it must determine the facts from a consideration of all the evidence, look to the instructions from the court for the law of the case, and find the verdict accordingly. The court also instructed the jury that comments or remarks made by counsel, including the opening and closing arguments, should not be considered as evidence.

With respect to the prosecutor eliciting testimony from Officer Emminger regarding Cody's statement that his brother was the driver of the pickup, we do not find

17

either prosecutorial misconduct or fundamental error, and we cannot say that Smith has demonstrated fundamental error with respect to his individual claims or cumulatively.

III.

The next issue is whether the court's admonishments that the jury could discuss the testimony it had heard for the purpose of making sure that each juror heard the same thing constituted fundamental error. Smith argues that the trial court's repeated advisement to the jury that it should or could make sure each juror heard the same thing was improper and created a risk that the jury did not properly consider and evaluate the evidence in reaching its verdict. Smith contends that "[i]t is the responsibility of each juror to evaluate the evidence as he or she heard it, not to agree with another juror or jurors as to specifically what was stated or heard." Appellant's Brief at 17. He argues that there is a substantial possibility that the court's advisement misled the jury as to its duty in evaluating the evidence and deprived him of a fair trial.

The State points out that Smith did not object to any of the admonishments and contends that if error occurred, it served only to unduly limit the jury's discussions, and that nothing in the court's language required the jury to believe that if they heard something differently they heard incorrectly.

Ind. Jury Rule 20(a) provides:

> The court shall instruct the jury before opening statements by reading the appropriate instructions which shall include at least the following . . . (8) that jurors, including alternates, are permitted to discuss the evidence among themselves in the jury room during recesses from trial when all are present, as long as they reserve judgment about the outcome of the case until deliberations commence. The court shall admonish jurors not to discuss the case with anyone other than fellow jurors during the trial.

18

We conclude that the trial court's repeated admonishment during the trial that the jury could discuss the testimony only for the sole purpose of making sure the jurors heard the same thing was improper. Nevertheless, to prevail on appeal, Smith must demonstrate fundamental error.

The court gave the jury the following final instruction:

> As jurors, it is your duty to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so without compromising your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest belief or opinion as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Appellant's Appendix at 154. Under the circumstances, we cannot say that Smith has demonstrated fundamental error.

IV.

The next issue is whether Smith knowingly, voluntarily, and intelligently waived his right to a jury trial on the habitual offender charge. He argues that at no point in the proceedings did he personally and affirmatively waive his right to have a jury decide whether he was an habitual offender. He concedes that he did not object at the habitual offender phase and cites Reynolds v. State, 703 N.E.2d 701 (Ind. Ct. App. 1999), for the proposition that fundamental error occurs when a defendant is denied a jury trial unless there is evidence of his knowing, voluntary and intelligent waiver of the right.

The State concedes that the record does not include a formal advisement of Smith's right to have a jury determine his status as an habitual offender or an explicit

19

formal waiver of that right. However, the State argues that these omissions do not require reversal absent some showing of prejudice, and points to Smith's admissions related to his prior convictions and the trial court's questions to him.

Both the United States Constitution[1] and the Indiana Constitution[2] guarantee the right to trial by jury. Dixie v. State, 726 N.E.2d 257, 258 (Ind. 2000). A criminal defendant is presumed not to waive this right unless he affirmatively acts to do so. Id. A defendant may waive his right if he does so personally, intelligently, and voluntarily. Id. The right to trial by jury applies to habitual offender proceedings. Id. at 259; Ind. Code § 35-50-2-8. "The defendant must express her personal desire to waive a jury trial and such a personal desire must be apparent from the court's record, whether in the form of a written waiver or a colloquy in open court." O'Connor v. State, 796 N.E.2d 1230, 1234 (Ind. Ct. App. 2003).

Ind. Code § 35-37-1-2 governs waiver of trial by jury and provides: "The defendant and prosecuting attorney, with the assent of the court, may submit the trial to the court. All other trials must be by jury." In Kellems v. State, the Indiana Supreme held:

> [W]e adhere to the general principle enunciated in [Doughty v. State, 470 N.E.2d 69, 70 (Ind. 1984)]: Indiana Code Section 35-37-1-2 (2004), dictates that a knowing, voluntary, and intelligent waiver of the right to a jury trial requires assent to a bench trial "by defendant personally, reflected in the record before the trial begins either in writing or in open court. The record reflection must be direct and not merely implied. It must show the

---

[1] U.S. CONST. amend. VI.

[2] IND. CONST. art. 1, § 13.

personal communication of the defendant to the court that he chooses to relinquish the right."

849 N.E.2d 1110, 1113 (Ind. 2006).

This court has previously held that "[i]t is fundamental error to deny a defendant a jury trial unless there is evidence of the defendant's knowing, voluntary and intelligent waiver of the right." Reynolds v. State, 703 N.E.2d 701, 704 (Ind. Ct. App. 1999). Further, this court addressed a similar situation in O'Connor v. State, in which the defendant waived her right to a jury trial and the State subsequently filed an information alleging her to be an habitual offender. 796 N.E.2d at 1232. A bench trial was conducted and the court found the defendant guilty as charged. Id. During the habitual offender phase, the defendant stipulated to the evidence which the State presented in support of the habitual offender information. Id. The court then found the defendant to be an habitual offender. Id. at 1232-1233. On appeal, the defendant argued that she did not knowingly, voluntarily, and intelligently waive her right to a jury trial on the underlying charges and as to the habitual offender determination. Id. at 1232. He held that the defendant had waived her right to a jury trial on the underlying charges, but that with respect to the habitual offender information which had not been filed at the time the defendant waived her right to a jury trial, the defendant was never advised of her right to a jury trial as to the habitual offender determination and that at no time did she waive her right to such. Id. at 1234-1235. We reversed the trial court's habitual offender determination, vacated the sentence imposed thereon, and remanded to the trial court. Id.

While Smith admitted to the convictions corresponding to those listed in the habitual offender allegation, the defendant in O'Connor likewise stipulated to the

21

evidence in support of the habitual offender information, and we did not find such fact to be determinative of the outcome. Based upon O'Connor and the record, we vacate the habitual offender enhancement and remand for proceedings consistent with this opinion. See O'Connor, 796 N.E.2d at 1232-1235; see also Kellems, 849 N.E.2d at 1114 (holding that the trial court's failure to secure a waiver from the defendant personally and to ensure that the waiver was reflected in the record necessitated granting the defendant a new trial); Patton v. State, 495 N.E.2d 534, 535 (Ind. 1986) (observing that there was nothing in the record to indicate that the defendant personally waived his right to a jury trial and that, while the defendant did not object to going to trial without a jury, the right to a trial by jury is fundamental to the American scheme of justice, and holding that the Court had no choice but to reverse and remand the case to the trial court either for a trial by jury or for an express waiver).

We also observe that the trial court sentenced Smith to one year for Count IV, failure to stop after an accident resulting in damage to property other than a vehicle as a class B misdemeanor. However, Ind. Code § 35-50-3-3 provides that "[a] person who commits a Class B misdemeanor shall be imprisoned for a fixed term of not more than one hundred eighty (180) days . . . ." Accordingly, we also remand to the trial court to sentence Smith within the limit expressed in Ind. Code § 35-50-3-3. See Morgan v. State, 417 N.E.2d 1154, 1156-1157 (Ind. Ct. App. 1981) (noting *sua sponte* that the defendant received an improper sentence where the defendant was sentenced to one year imprisonment for a class B misdemeanor and holding that the proper sentence of

22

imprisonment should have been for a term not more than 180 days pursuant to Ind. Code § 35-50-3-3).

For the foregoing reasons, we affirm Smith's convictions, vacate the habitual offender enhancement, and remand the case for proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

ROBB, J., and BARNES, J., concur.