**Harold Wayne REYNOLDS,
Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

No. 80A04–9803–CR–173.

Court of Appeals of Indiana.

Jan. 6, 1999.

Steven C. Smith, Patrick R. Ragains, Jane G. Cotton, Smith, Ragains & Cotton, Anderson, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Randi E. Froug, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant-defendant Harold Wayne Reynolds (Reynolds) appeals his conviction of Resisting Law Enforcement,[1] a Class D Felony.

We affirm.

The sole issue on appeal is whether Reynolds knowingly, voluntarily and intelligently waived his right to a trial by jury. The argument is premised upon the fact that defense counsel, not the court, advised Reynolds of the substance of such right and that Reynolds had been found only minimally competent to stand trial.

While on duty during the afternoon of Saturday, February 8, 1997, Detective David Lee Cochran (Cochran) of the Tipton County Sheriff's Department attempted to serve an arrest warrant on Reynolds, whom Cochran observed walking westbound on State Road 28 near the town of Hobbs, Indiana, in Tipton County. Driving a marked police unit, Cochran activated the vehicle's flashing lights and stopped directly behind Reynolds. Cochran, who was not in uniform but displayed a badge on his belt and a firearm at his side, stepped out of his car and yelled at Reynolds by name. Reynolds stopped and turned around to face Cochran, at which point Cochran identified himself as a police officer and asked Reynolds to step back to the vehicle. Reynolds responded with a pro-

fane phrase and started running southbound. Cochran yelled at Reynolds, ordering him not to run and informing Reynolds that he was under arrest.

Cochran next observed Reynolds standing in an alley behind a residence. Detective Cochran again advised Reynolds that he was under arrest. Reynolds cursed at Cochran and walked away to the side of the residence. Reynolds attempted to enter the residence through a window but was denied access. Cochran exited his police vehicle, yelled once more at Reynolds and started to approach him. At that point, Reynolds picked up a two by two inch pine board, eight feet in length, and started walking towards Cochran, while swinging the board like a baseball bat. Cochran drew his firearm and ordered Reynolds to drop the board or risk being shot. Still swinging the board, Reynolds threatened to kill Cochran and continued advancing towards him. A second officer, Michael Pratt, arrived on the scene and attempted to calm Reynolds down. When approximately ten feet away from Cochran, Reynolds stopped his advance and stopped swinging the board, although stilling holding onto it. A third officer on the scene, Trooper Jack Horner, then grabbed Reynolds and laid him over the hood of Cochran's vehicle. Cochran handcuffed Reynolds and transported him to the county jail.

The State filed an Information against Reynolds on April 16, 1997, charging him with one count of Resisting Law Enforcement.[2] On July 11, 1997, upon motion by Reynolds, the trial court ordered an examination of Reynolds in order to determine his competence to stand trial.[3] Dr. Robert J. McDaniel informed the trial court on August 11, 1997, that Reynolds possessed the minimal capacity to stand trial. Reynolds had received a score of 21 on a competency screening test. According to Dr. Reynolds,

---

1. I.C. 35–44–3–3 (Burns Code Ed. Repl.1994 & Supp.1998).

2. The charge was elevated to a Class D Felony because Reynolds committed the offense while using a "deadly weapon." I.C. 35–44–3–3(b)(1)(B) (Burns Code Ed. Repl.1994 & Supp. 1998).

3. The Motion was made pursuant to I.C. 35–36–3–1 and, as provided by that statute, requested the appointment of two or three psychiatrists, psychologists or physicians to examine Reynolds. The regular judge of the court, however, without explanation, appointed only one such person who conducted an examination. Neither party, however, presents this as an issue for resolution.

"[s]cores above 20 suggest that an individual is competent to stand trial." Record at 27. Also, Reynolds had explained the duties of different officers of the court and had expressed his willingness to aid his attorney in preparing his defense.

On the day scheduled for his jury trial, October 28, 1997, Reynolds appeared with his counsel in open court, and the trial court made a preliminary inquiry as to whether Reynolds chose to waive his right to a jury trial. Under oath, Reynolds responded as follows to questions asked by defense counsel:

"Q. Harold, you understand that you have a constitutional right to have your criminal charges heard by a jury?

A. Yes, sir.

Q. And do you understand what that means?

A. Yes.

Q. Can you try to explain to the Court what that means?

A. I'm liable to have a jury trial.

Q. And what does a jury trial mean?

A. (No audible answer.)

Q. Do you believe it to mean that—that citizens from the community would listen to the evidence and make a decision based on the testimony and the evidence presented as to whether the State proved its case and made you guilty or not guilty, is that what you understand a jury trial to be?

A. Yeah. Yeah.

Q. Okay and you also understand that you have a right to waive your right to a jury trial?

A. Yes.

Q. And you have a right to have a court trial or a bench trial?

A. Yes.

Q. And do you understand that a court trial is when a jury of citizens does not judge the evidence, but a—the judge will listen to the evidence and the judge will make a decision as to whether the State proved its case

and to whether you should be found guilty or not guilty?

A. Yeah.

Q. Okay and you understand the difference between a jury trial and bench trial?

A. Yes.

Q. Do you have an opinion today as to whether you wish to have your case heard by a jury or by the Court?

A. I'd rather have it heard by the Court.

Q. And you understand that by having your case heard by the Court you are giving up your constitutional rights for the jury trial?

A. Yes.

Q. And are you making that decision because you believe that that is what is in your best interests today?

A. Yes.

Q. And you want to have a bench trial today?

A. Yes." Record at 42–44.

Upon hearing this testimony, the trial court determined that Reynolds had voluntarily, freely and knowingly waived his constitutional right to a jury trial. A bench trial ensued, and, following presentation of the evidence, the court found Reynolds guilty of the crime charged. The trial court ordered preparation of a presentence investigation report. On December 18, 1997, the trial court conducted a sentencing hearing and sentenced Reynolds to three years incarceration, less 253 days for time served prior to sentencing. The court cited as an aggravating factor Reynolds' extensive criminal history, including a prior conviction for the same offense, and cited as a mitigating factor Reynolds' history of "mental illness" or "instability." Record at 89.

Reynolds contends that he did not make a voluntary, knowing and intelligent waiver of his right to a jury trial. Thus, he argues, the trial court committed fundamental error. Reynolds asserts that he was not properly advised as to jury trial waiver. He asserts:

"In addition to what was conveyed to Reynolds by trial counsel, it is important to point out to this Court what was left

out. There was nothing said about Reynolds['] capacity to understand the proceedings regarding the waiver of his right to a jury trial. He was not informed that it would be six (6) citizens who are sworn to be impartial and that both his attorney and the prosecutor would engage in their selection. He was not told he could take certain jurors off the panel for no particular reason pursuant to peremptory strikes. There was no inquiry into Reynolds' ability to read and understand the English language, nor is there any evidence as to whether Reynolds had any formal schooling, and if he did, to what level or extent." Appellant's Brief at 9.

The record, according to Reynolds, does not support the trial court's determination that Reynolds knew and understood the nature, extent and importance of his right to a jury trial.

■ A person charged with a felony has an automatic right to a jury trial unless he waives it. *Hutchins v. State* (1986) Ind., 493 N.E.2d 444, 445. It is fundamental error to deny a defendant a jury trial unless there is evidence of the defendant's knowing, voluntary and intelligent waiver of the right. *Eldridge v. State* (1994) Ind.App., 627 N.E.2d 844, 846, *trans. denied.* The waiver must be elicited personally from the defendant, either orally in open court or in writing. *Id.* This court has observed:

> "A voluntary waiver occurs if the conduct constituting the waiver is the product of a free will; a knowing waiver is the product of an informed will; an intelligent waiver is the product of a will that has the capacity to understand; and a waiver is personal if it is made by the defendant. In all cases, the fact of a voluntary, knowing, and intelligent waiver of the right to a trial by jury must be reflected in the record." *Id.*

■ The record supports the trial court's conclusion that Reynolds properly waived his right to a jury trial. His decision was an informed one. The extensive dialogue between Reynolds and his counsel prior to commencement of the bench trial constituted a sufficient advisement as to Reynolds' right to a jury trial. Reynolds' affirmative responses indicated that he knew both that he had a constitutional right to a jury trial and that he was giving up that right in favor of a bench trial. Moreover, Reynolds responded affirmatively that he understood the fundamental difference between a jury and bench trial and that he believed a bench trial was in his best interest. Reynolds' counsel did not have to explain each and every possible detail concerning a jury trial in order for the defendant to be sufficiently informed about the nature of a jury trial and the consequences of waving his right to a jury trial.

■ Furthermore, we find no requirement that the trial court must conduct the advisement of a defendant. A defendant must make an informed decision and the fact of an informed decision must be reflected in the record. Thus, it is the message and not the messenger which is of paramount importance. In fact, where counsel is trusted by his defendant-client, one might reasonably conclude that advisement by counsel as to waiver might facilitate the defendant's better understanding of the consequences of waiving the right to a jury trial.

We turn now to the question of whether Reynolds made an intelligent waiver of his right to a jury trial. Reynolds suggests that he did not have the capacity to understand the significance of and the procedures for waiving his right to a jury trial. We disagree. Reynolds was examined by a physician and found to be minimally competent to stand trial. That finding reasonably provided a basis for also determining that Reynolds possessed the mental capacity to intelligently make other decisions regarding his defense, such as waiving his right to a jury trial. In addition, the record reflects no evidence indicating that Reynolds did not understand the proceedings against him or that he lacked the capacity to assist in his own defense.[4]

**4.** The State cites *Poore v. State* (1997) Ind., 681 N.E.2d 204, 207, for the proposition that Reynolds' "familiarity with the judicial process supported the likelihood that Defendant knew how a jury operated." Appellee's Brief at 6. In *Poore,* the Indiana Supreme Court observed that the defendant's "significant criminal history [including five prior felony convictions] suggests a high level of familiarity with the judicial process, making it quite likely that he knew what a 'jury'

The record also lacks evidence indicating that Reynolds' mental status changed from the time of his examination until the time he waived his right to a jury trial. *See Brown v. State* (1956) 235 Ind. 186, 131 N.E.2d 777, 779 (observing that nothing in the record suggested that defendant's mental condition changed between time of examination and time of trial, so court properly allowed submission of case to the jury on the presumption that defendant was sane). We thus conclude that Reynolds made an intelligent waiver of his right to a jury trial.

Reynolds made a free and conscious decision to waive his right to a jury trial. His decision was sufficiently informed, and he possessed, albeit perhaps minimally, the mental capacity required to make his decision. In short, Reynolds made a voluntary, knowing and intelligent waiver of his right to a jury trial. His waiver was made orally in open court and is well documented by the record.

The judgment is affirmed.

SHARPNACK, C.J., and HOFFMAN, Senior Judge, concur.

was." *Poore, supra,* at 207. On this issue, *Poore* does not apply to the instant case. The defendant in *Poore* had received his G.E.D. and had two years of undergraduate study at a Florida junior collage; nothing suggested that he possessed a mental disability. In contrast, Reynolds was shown to be only minimally competent and had a history of mental illness. Thus, although Reynolds was competent to stand trial, we cannot assume that Reynolds' prior contacts with the criminal justice system increased the likelihood that he understood the nature of a jury trial and the significance of waiving his right to a jury trial. Our conclusion on this point does not affect our ultimate decision in this matter that Reynolds waived his right to a jury trial.