Leandrew JONES, Appellant–
Defendant,

v.

STATE of Indiana, Appellee.

No. 49A02–0310–CR–895.

Court of Appeals of Indiana.

June 28, 2004.

Michael R. Fisher, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Leandrew Jones was convicted after two bench trials of battery as a Class C felony,[1] and being an habitual offender.[2] He raises two issues:

1. Whether he knowingly, voluntarily and intelligently waived his right to trial by jury on the habitual offender charge; and

2. Whether the evidence is sufficient to support the conviction of battery as a Class C felony.

We reverse in part, affirm in part, and remand.

---

1. Ind.Code § 35–42–2–1.

2. Ind.Code § 35–50–2–8.

## FACTS AND PROCEDURAL HISTORY

On April 7, 2003, Jones and his girl-friend, Tseland Copeland, began to fight while playing cards. Jones hit Copeland several times on the head and face. The fight continued outside the house, where Jones grabbed Copeland by the hair. She briefly lost consciousness, and suffered a black eye and a cut on her head. Copeland was taken to the hospital, where emergency medical staff observed she had multiple bruises on her forehead and face, was bleeding, and had swelling around her right eye.

On April 25, 2003, Jones was charged with battery as a Class C felony and criminal confinement as a Class D felony. On July 30, 2003, a hearing was held on the State's request for extension of time to file an habitual offender count. On August 19, 2003, a hearing was held at which Jones was informed that "if you go to a court trial or a jury trial tomorrow, [the State is] going to file the habitual offender count against you, which I believe the law allows him to do, so I want to make sure you understand how that changes what kind of … sentencing range we're talking about, because it does get kind of confusing." (Supp.App. of Appellee at 36.) At this point, no habitual offender count had been filed.

Apparently, a plea agreement was under consideration at this time.[3] Jones met with his attorney to discuss the plea agreement. After speaking with his attorney, Jones agreed to waive jury trial. He signed a Waiver of Trial by Jury on August 19, 2003. Nowhere in that document nor in the questions by the court with respect to the waiver did the parties raise the issue

---

3. A copy of the proposed plea agreement is not included in any of the appendices.

of the specific charges for which Jones was waiving jury trial.

After the trial court questioned Jones, it granted his waiver of a trial by jury. The trial court then asked the State: "I assume in the morning you're going to file the Habitual Offender Information"? (*Id.* at 41.) The State agreed that if the plea was not taken the following morning, the habitual offender count would be filed.

After a bench trial on August 20, 2003, Jones was found guilty of battery as a Class C felony and not guilty of criminal confinement. It was not until August 29, 2003 that the State filed the habitual offender information.[4] On September 2, 2003, the trial court advised Jones of his "Initial Hearing Rights" (Tr. at 46) as to the habitual offender count. However, he was not advised of his right to a jury trial during the habitual offender phase. After the advisement, a bench trial was held and Jones was found guilty of being an habitual offender.

## DISCUSSION AND DECISION

### 1. *Habitual Offender Proceeding*

■ "The United States and Indiana Constitutions guaranty the right to trial by jury." *Poore v. State*, 681 N.E.2d 204, 206 (Ind.1997) (footnotes omitted). That right applies to habitual offender proceedings. *Dixie v. State*, 726 N.E.2d 257, 259 (Ind. 2000). A person charged with a felony has an automatic right to a jury trial, and he is presumed not to waive this right unless he affirmatively acts to do so. *Poore*, 681 N.E.2d at 207. It is fundamental error to deny a defendant a jury trial unless there is evidence of a knowing, voluntary and

intelligent waiver of the right. *Reynolds v. State*, 703 N.E.2d 701, 704 (Ind.Ct.App. 1999). "The defendant must express his personal desire to waive a jury trial and such a personal desire must be apparent from the court's record," *Poore*, 681 N.E.2d at 206, whether in the form of a written waiver or a colloquy in open court. *See Good v. State*, 267 Ind. 29, 32, 366 N.E.2d 1169, 1171 (1977).

■ Jones argues the record does not reflect he knowingly, voluntarily and intelligently waived his right to a jury trial on the habitual offender count. Jones knew the count would be filed if a guilty plea agreement was not accepted, but it was not filed until nine days after the bench trial on his underlying charges. Neither the Waiver of Trial by Jury nor the questions by the judge during the hearing on the waiver of jury trial indicate the charges for which Jones was waiving his right to a jury trial.

In *O'Connor v. State*, 796 N.E.2d 1230, 1232 (Ind.Ct.App.2003), the State had not yet filed an habitual offender count when O'Connor waived her right to trial by jury. The State argued that O'Connor knew an habitual offender count would be filed, as the plea agreement referred to it. We held:

> Although O'Connor's trial counsel testified that she "probably" informed O'Connor of the possibility of the State filing an habitual offender information during one of her first meetings with O'Connor, the fact remains that when O'Connor waived her right to a jury trial, the State had not filed the habitual offender information against her. Further, we cannot say that the pre-trial

4. At the bench trial, the State requested permission to file the habitual offender count and bifurcate the proceedings. Jones neither objected to the procedure nor requested a continuance of the trial. Additionally, Jones does

not raise this issue on appeal. Consequently, we do not address on appeal the propriety of the State filing an habitual offender information after a trial.

conference memorandum, which contained the State's plea offer indicating that if O'Connor pleaded guilty as charged to forgery, the State would not file the habitual offender information, and any discussion between O'Connor and her trial counsel to that effect, made O'Connor sufficiently aware that her waiver of a jury trial as to the underlying charges was also a knowing, voluntary, and intelligent waiver of her right to a jury trial as to her status as an habitual offender. As to the discussion at the pre-trial conference about the extension of the omnibus date and the possibility of the State filing the habitual offender information, such occurred after O'Connor waived her right to a jury trial and thus is not pertinent to whether O'Connor's prior waiver of a jury trial was a knowing and intelligent waiver of her right to a jury trial with regard to her habitual offender status.

Even though O'Connor knowingly, voluntarily, and intelligently waived her right to a jury trial upon the underlying charges, we fail to see how O'Connor's waiver was effective as to an habitual offender information which had yet to be filed. The record reveals that O'Connor was never advised of her right to a jury trial as to the habitual offender determination and that at no time after the State filed the habitual offender information did she waive her right to such. O'Connor's waiver of her right to a jury trial was not made with sufficient awareness of the relevant circumstances surrounding its entry and its consequences so as to be deemed a voluntary, knowing, and intelligent waiver of her right to a jury trial as to the habitual offender determination. Therefore, we reverse the trial court's habitual offender deter-

mination, vacate the sentence imposed thereon, and remand to the trial court for proceedings not inconsistent with this opinion.

*O'Connor,* 796 N.E.2d at 1234–35.

As in *O'Connor,* we believe Jones was not given the opportunity to voluntarily, knowingly and intelligently waive his right to trial by jury on the habitual offender count. Therefore, as in *O'Connor,* we reverse the trial court's habitual offender determination, vacate the sentence imposed thereon, and remand to the trial court for further proceedings consistent with this opinion.

### 2. *Sufficiency of Evidence*

■ Jones argues Copeland's injuries did not rise to the level of serious bodily injury.[5] In order to prove a serious bodily injury, the State had to prove the victim sustained "bodily injury that creates a substantial risk of death or that causes: (1) serious permanent disfigurement; (2) unconsciousness; (3) extreme pain; [or] (4) permanent or protracted loss or impairment of the function of a bodily member or organ." Ind.Code § 35–41–1–25. "Whether bodily injury is 'serious' has been held to be a matter of degree and therefore a question reserved for the factfinder." *Young v. State,* 725 N.E.2d 78, 82 (Ind.2000).

Copeland testified she was out of consciousness for "a minute." (Tr. at 13.) She also testified that it hurt when Jones hit her. She testified that she had pain around her face and head for about a week. The medical records from her emergency room visit show Copeland "thinks she may have 'blacked out' for a few seconds," (Exhibit Vol. at 7), and that she complained of pain.

---

**5.** Battery is a Class C felony if it results in serious bodily injury to any other person or if it is committed by means of a deadly weapon. Ind.Code § 35–42–2–1(a)(3).

This case is analogous to *Beanblossom v. State*, 530 N.E.2d 741, 742–43 (Ind.1988), where the victim felt a sharp pain in the back of his head, became dizzy and fell to his hands and knees. As his mind cleared, he looked back at the defendant. Our supreme court found this was enough to prove serious bodily injury. Likewise, there was ample evidence Copeland suffered serious bodily injury.

 Jones also argues there was a variance between proof at trial and the charging information, and that variance is fatal. The test to determine whether a variance between the proof at trial and a charging information is fatal is as follows:

(1) was the defendant misled by the variance in the evidence from the allegations and specifications in the charge in the preparation and maintenance of his defense, and was he harmed or prejudiced thereby; (2) will the defendant be protected in a future criminal proceed-

ing covering the same event, facts, and evidence against double jeopardy.

*Mitchem v. State*, 685 N.E.2d 671, 677 (Ind.1997).

The information alleged Jones touched Copeland in a rude, insolent or angry manner, causing her to lose consciousness. Jones was made aware she suffered pain, as Copeland testified to that fact without objection and it was mentioned in the hospital records. Jones was not misled nor prejudiced by this evidence. Any variance was not fatal.

Reversed in part, affirmed in part, and remanded.

SULLIVAN, J., and VAIDIK, J., concur.