Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 06 2013, 5:37 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL G. MOORE**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOSHUA DOAN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1302-CR-90 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kurt M. Eisgruber, Judge
Cause No. 49G01-1110-FA-72982

**November 6, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Joshua Doan appeals his conviction for Class A felony burglary and the trial court's determination that he is a habitual offender. First, he claims the evidence is not sufficient to support his conviction for Class A felony burglary. Second, he argues that the trial court erroneously permitted the habitual-offender information to be filed. Third, he contends that he did not knowingly, intelligently, or voluntarily waive his right to a jury trial. Finding that the evidence was sufficient to support his conviction for Class A felony burglary, that Doan did not preserve the issue of the untimely filing of the habitual-offender information for appeal, and that he did not knowingly, voluntarily, and intelligently waive his jury-trial rights for the habitual-offender charge, we reverse in part and affirm in part.

**Facts and Procedural History**

On September 30, 2011, Efren Merino Lopez texted Crystal Holloway and asked her to come to his mobile home and have sex with him in exchange for money. Shortly thereafter, Crystal arrived at Efren's mobile home with her friend, Bethany Arthur. Clevon Stone[1] and Doan rode with the girls and remained in the car. Crystal and Bethany went into Efren's mobile home and discussed the price for having sex. Crystal then went to the bathroom and called Stone on her cell phone.

Stone and Doan ran from the car to the mobile home and burst inside demanding money. Doan was armed with a pistol and Stone was armed with an assault rifle. Crystal and Bethany went to the car and waited for Doan and Stone. Doan pointed his gun at

---

[1] In a related case, this Court affirmed the convictions of co-defendant Clevon Stone. *Stone v. State*, No. 49A05-1303-CR-102 (Ind. Ct. App. Nov. 6, 2013).

Efren. He then hit Efren with the pistol, causing him to fall to the ground. Once on the ground, Doan started kicking Efren and demanded money. Efren's head and face were injured, requiring stitches. Doan then asked if anyone else was in the house. Efren told Doan that his brother, Fidel Merino Lopez, and two young children were sleeping in the other room. Doan went into the bedroom and awakened Fidel and his children. Stone stayed in the living room, pointing his rifle at Efren.

Doan then ordered Fidel and his children into the living room. Once in the living room, Doan hit Fidel with his pistol, knocking him to the floor. Stone hit Fidel with his rifle, injuring Fidel's head. Doan and Stone demanded money from Fidel.

Meanwhile, Bethany, who was still sitting in the car, became worried and returned to the mobile home. Once inside, she went into Efren's bedroom and rummaged through his belongings, looking for valuables. Bethany then went back into the living room. Doan grabbed Efren's wallet and handed it to Bethany. She took the wallet to the car and then returned to the mobile home.

Shortly thereafter, the police arrived. Doan, Stone, and Bethany escaped through the back window of the mobile home. The police found Stone and Bethany behind the mobile home. Stone's rifle was also found behind the mobile home. The police did not find Doan. He was later apprehended, and Efren identified him in a photo array.

The State charged Doan with Class A felony burglary, two counts of Class B felony robbery, two counts of Class C felony battery, two counts of Class B felony criminal confinement, Class B felony unlawful possession of a firearm by a serious violent felon, and Class A misdemeanor carrying a handgun without a license.

3

Appellant's App. p. 25-28. The Class A misdemeanor carrying a handgun without a license charge was enhanced to a Class C felony because Doan had been convicted of a felony within the last fifteen years. *Id.* at 30. Doan's initial hearing occurred in May 2012, and the trial court scheduled his omnibus date for July 13, 2012. *Id.* at 7. Doan waived his right to a jury trial in August 2012. *Id.* at 39-40. On October 23, 2012, the State filed a Notice of Filing Habitual Offender to have Doan sentenced as a habitual offender. *Id.* at 52-54. The trial court granted the motion. *Id.* at 10. Before trial, the State dismissed Doan's charge of Class B felony unlawful possession of a firearm by a serious violent felon. In December 2012, Doan requested a continuance because defense counsel would be unavailable on the day of the previously scheduled trial. *Id.* at 55.

A bench trial was conducted in January 2013. The trial court granted Doan's motion for a judgment on the evidence for one count of Class B felony robbery. Tr. p. 159-60. The trial court found Doan guilty of Class A felony burglary, Class B felony robbery, two counts of Class C felony battery, and two counts of Class B felony criminal confinement. *Id.* at 174-76. Doan stipulated that he was a habitual offender in exchange for the State dismissing his Class B felony unlawful possession of a firearm by a serious violent felon and his Class C felony enhancement for carrying a handgun without a license. *Id.* at 177-78. The court determined that Doan was a habitual offender. *Id.* at 179. Doan was found guilty of Class A misdemeanor carrying a handgun without a license. *Id.* at 180-81.

At sentencing, the trial court sentenced Doan to fifty years imprisonment, which included a thirty-year habitual-offender enhancement. *Id.* at 215. The trial court ordered the final six years of Doan's sentence to be executed at Community Corrections. *Id.*

Doan now appeals.

## Discussion and Decision

Doan raises three issues on appeal. First, Doan argues that the evidence is insufficient to support his conviction for Class A felony burglary. Second, he contends that the trial court abused its discretion in allowing the State to file the habitual-offender information after the statutory time limit expired. Last, Doan claims that the trial court erred in determining that he was a habitual offender because there was no initial hearing and because he did not validly waive his right to a jury trial on the habitual-offender charge.

## I. Sufficiency of the Evidence

Doan contends that the evidence is insufficient to support his conviction for Class A felony burglary. When reviewing the sufficiency of the evidence, we neither reweigh the evidence nor determine the credibility of witnesses. *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012). We look solely to the evidence most favorable to the judgment together with all reasonable inferences to be drawn therefrom. *Id.* A conviction will be affirmed if the probative evidence and reasonable inferences to be drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

Class C felony burglary is the breaking and entering of the building or structure of another with the intent to commit a specific felony therein. Ind. Code § 35-43-2-1. The offense is elevated to a Class A felony if it results in bodily injury or serious bodily injury to any person other than a defendant. *Id.* § 35-43-2-1(2). Doan argues that the evidence is insufficient to support his conviction for Class A felony burglary because Doan's pistol was not a deadly weapon. However, the burglary statute contains no requirement that a deadly weapon be used in elevating the burglary offense from a Class C felony to a Class A felony. Rather, the question is whether the State provided sufficient evidence of "bodily injury" to sustain Doan's Class A felony burglary conviction.

Bodily injury is defined as "any impairment of physical condition, including physical pain." *Id.* §35-31.5-2-29. This Court has held that any physical pain is sufficient to constitute bodily injury. *Toney v. State*, 961 N.E.2d 57, 60 (Ind. Ct. App. 2012). In this case, Efren and Fidel's injuries are sufficient to establish that they experienced physical pain. Doan hit both Efren and Fidel, causing injuries to both of their heads and faces. Moreover, Efren testified to being in pain. Tr. p. 37. Because evidence of any pain is sufficient to establish the bodily injury necessary to elevate the burglary to a Class A felony burglary, the evidence is sufficient to find Doan guilty of Class A felony burglary.

## II. Filing the Habitual-Offender Information

Doan contends that the trial court abused its discretion by allowing the State to file the habitual-offender information after the statutory time limit expired. An abuse of discretion occurs "only where the decision is clearly against the logic and effect of the

6

facts and circumstances." *Land v. State*, 802 N.E.2d 45, 53 (Ind. Ct. App. 2004), *trans. denied*.

Under Indiana law, "[a]n amendment of an indictment or information to include a habitual offender charge under IC 35-50-2-8 . . . must be made not later than ten (10) days after the omnibus date." Ind. Code Ann. § 35-34-1-5(e) (West 2012).[2] However, a trial court may allow a habitual-offender charge to be filed at any time before the beginning of trial "upon a showing of good cause." *Id.*

The State filed the habitual-offender information 102 days after the omnibus date, which is significantly more than ten days after the omnibus date. Although the State did not establish good cause for filing the habitual-offender information after the deadline, the Indiana Supreme Court has held that unless the defendant objects or moves for a continuance, he waives the issues on appeal. *White v. State*, 963 N.E.2d 511, 518 (Ind. 2012). In *White*, the Supreme Court stated that "to preserve this issue for appeal, a defendant must request a continuance after a trial court permits a tardy habitual-offender filing." *Id.* In that case, the Supreme Court explained that this rule has no exceptions. *Id.* Despite no finding of good cause for the late filing, the appellate court could not reach that argument because the defendant waived it by failing to object or request a continuance. *Id.* Indeed, "[a] party may not sit idly by and permit the court to act in a claimed erroneous matter and then attempt to take advantage of the alleged error at a later time." *Hensley v. State*, 251 Ind. 633, 244 N.E.2d 225, 228 (1969).

---

[2] In July 2013, after the trial in this case occurred, the Indiana legislature amended this statute to permit the filing of a habitual-offender charge at least thirty days before trial. Ind. Code § 35-34-1-5(e).

Here, Doan never objected or responded to the State's motion to file the habitual-offender charge.[3]   The only continuance Doan requested was because defense counsel was unavailable for trial at the originally scheduled trial.[4]   Appellant's App. p. 55. Moreover, Doan did not raise the issue during the habitual-offender portion of the proceeding.   Tr. p. 176-81.   Doan argues that he was not required to request a continuance or to object.   He cites no authority to support this argument in his brief. Appellant's Br. p. 7.   Doan's argument is contrary to well-established precedent, as explained in *White*.

Finally, Doan argues that his rights were substantially prejudiced by the late filing of the habitual-offender information because he waived his jury-trial rights before the habitual-offender information was filed.   Substantive amendments may be made to an indictment or information as long as the defendant's rights are not substantially prejudiced.   Ind. Code Ann. § 35-34-1-5(b) (West 2012).[5]   This Court has stated that these rights include "a right to sufficient notice and an opportunity to be heard regarding the charge."   *Jones v. State*, 863 N.E.2d 333, 338 (Ind. Ct. App. 2007).   In considering these rights, the ultimate question is "whether the defendant had a reasonable opportunity

---

[3] Doan argues that this case is analogous to *Hooper v. State* because the State did not show good cause, but it is distinguishable.   In *Hooper*, the defendant objected to the State's amendment of the charges by filing a habitual-offender enhancement.   779 N.E.2d 596, 602 (Ind. Ct. App. 2002).   In this case, Doan made no such objection.

[4] In *White*, the Indiana Supreme Court suggested that if White had requested a continuance, but there was no showing of good cause, the Court would have reached a different conclusion.   However, the continuance must be related to the late filing rather than an unrelated reason for the delay.   *See White*, 963 N.E.2d at 518.

[5] This portion of the statute was not changed in the July 2013 amendment.   *See* Ind. Code § 35-34-1-5(b).

to prepare for and defend against the charges." *Gomez v. State*, 907 N.E.2d 607, 611 (Ind. Ct. App. 2009), *trans. denied*. Here, Doan had an opportunity to be heard on his habitual-offender charge during the habitual-offender proceedings. He did not object to the late filing or complain about not having an initial hearing on the habitual-offender count. In fact, Doan stipulated to being a habitual offender in exchange for a dismissal of his charge for Class B felony possession of a firearm by a serious violent felon and a dismissal of his Class C felony enhancement for carrying a handgun without a license. Tr. p. 177-78. Moreover, Doan's three months to prepare for the habitual-offender proceeding was sufficient. *See Cheney v. State*, 486 N.E.2d 508, 514 (Ind. 1985) (holding that Cheney's rights were not substantially prejudiced when he had one-and-a-half months to prepare his defense after an amended substantive filing).

Although the State did not comply with the statute by filing the habitual-offender information more than thirty days after the omnibus date, Doan's failure to object waives the issue on appeal.

### III.  Waiver of Jury-Trial Rights

Doan also argues that he did not knowingly, voluntarily, and intelligently waive his right to a jury trial with respect to the habitual-offender charge. The right to a trial by jury is guaranteed by both the United States and Indiana Constitutions. *Jones v. State*, 810 N.E.2d 777, 779 (Ind. Ct. App. 2007). This right applies to habitual-offender proceedings. *Id.* A person charged with a felony has an automatic right to a jury trial, and is presumed not to waive that right unless he affirmatively acts to do so. *Id.*

9

Although Doan failed to object to not waiving his jury-trial rights, we may still consider his claim under the doctrine of fundamental error. Fundamental error occurs when "errors are so blatant and serious that to ignore them would constitute a denial of fundamental due process." *Sanders v. State*, 764 N.E.2d 705, 710 (Ind. Ct. App. 2002), *trans. denied.* A court may "consider the merits of a waived issue if the reviewing court finds that the error was so prejudicial to the rights of the appellant that he could not have had a fair trial." *Id.* In the context of jury-trial rights, "[i]t is fundamental error to deny a defendant a jury trial unless there is evidence of the defendant's knowing, voluntary and intelligent waiver of the right." *Reynolds v. State*, 703 N.E.2d 701, 704 (Ind. Ct. App. 1999).

For a jury-trial waiver to be effective, the Indiana Supreme Court requires "personal communication of the defendant to the court that he chooses to relinquish the right." *Doughty v. State*, 470 N.E.2d 69, 70 (Ind. 1984). Such communication can be either a signed writing or orally in open court so long as it is personal. *Id.* Even if the defendant is present while his attorney waives his jury-trial right for him, the defendant must still make a personal waiver. *Kellems v. State*, 849 N.E.2d 1110 (Ind. 2006).

This Court has vacated convictions of habitual-offender determinations when habitual-offender information was added after the defendant waived his jury-trial right and a new waiver was not obtained. *Jones*, 810 N.E.2d at 780; *O'Connor v. State*, 796 N.E.2d 1230 (Ind. Ct. App. 2003). When habitual-offender charging information is filed after a jury-trial waiver has been filed, this Court concluded that "[t]he record reveals that O'Connor was never advised of her right to a jury trial as to the habitual offender

determination and that at no time after the State filed the habitual offender information did she waive her right to such." *O'Connor*, 796 N.E.2d at 1235.

In this case, Doan executed a waiver of his jury-trial rights before the habitual-offender information was filed. The waiver made no mention of his charge as a habitual offender. Appellant's App. p. 39-40. At the commencement of the habitual-offender proceeding, the Court stated that, "I don't know if that was waived formally." Tr. p. 176. Defense counsel responded that, "[i]t was our intent to waive the entire proceeding on all accounts. *Id.* at 176-77. The trial court then stated that, "I would assume the habitual was part of your discussions and that would be my understanding as well." *Id.* at 177. Doan, however, made no personal statement waiving his rights. *Id.* 176-177. His attorney's statement, without more, was insufficient to waive Doan's jury-trial rights. *See Kellems*, 849 N.E.2d at 1113.

Therefore, we reverse the trial court's habitual-offender determination. We remand for a jury trial or a bench or jury trial if Doan waives his jury-trial right, on the habitual-offender count.

Affirmed in part, reversed in part.

BAKER, J., and FRIEDLANDER, J., concur.