John M. ANDERSON, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 60A05–0411–CR–586.

Court of Appeals of Indiana.

Aug. 26, 2005.

Kimberly A. Jackson, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy

Attorney General, Indianapolis, for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

John M. Anderson appeals his 1999 conviction following a bench trial for molesting a three-year-old child. Specifically, he contends that he did not knowingly, voluntarily, and intelligently waive his right to a trial by jury. Because the record does not reflect that Anderson affirmatively acted to waive his right to a trial by jury, the waiver is invalid. We therefore vacate Anderson's conviction and remand this case for a new trial. However, we also address the victim's out-of-court statements under *Crawford v. Washington* and Indiana's Protected Persons Statute because these issues will likely arise on retrial.

### Facts and Procedural History

The facts necessary to the resolution of this appeal are as follows. In August 1997, the State charged Anderson with one count of Child Molesting as a Class A felony [1] for molesting three-year-old B. B. is the daughter of Anderson's then-fiancée Cenisa Moreno. This charge stemmed from statements B. made to her great-grandmother, Violett Dunkin, on May 9, 1997. On that day, Dunkin and Anderson were watching B. while Moreno was at work. At some point during the day, Dunkin asked B. where she was going. B. replied, "I'm going upstairs. [Anderson is] going to let me suck his dick." Tr. p. 144. Dunkin then asked B. to repeat herself, and B. again said, "[Anderson is] going to let me suck his dick." *Id.* Dunkin told Moreno about B.'s statements, and Moreno reported the incident to Stephanie Raventos at the Owen County Office of Family and Children.

Raventos interviewed B. on May 12. During the interview, B. identified the female genitalia as "monkey" and the male genitalia as "dick." *Id.* at 160. B. then told Raventos that Anderson put his "dick" "in my mouth." *Id.* B. elaborated that Anderson "puts it in my mouth all the time." *Id.* B. added that when Anderson does this, "wet, yucky candy" comes out. *Id.* B. also said that Anderson puts his hands "on my monkey." *Id.* The next day, Raventos contacted the Indiana State Police.

On May 21, Raventos and Indiana State Police Detective Jeffrey Deckard interviewed B. During this interview, B. told Raventos and Detective Deckard that Anderson "[p]ut his tally-whacker in [my] mouth" and "touched [my] monkey." *Id.* at 164. At Detective Deckard's request, Raventos conducted a third interview with B. on June 5, during which B. said that Anderson "put his dick in [my] . . . mouth," "touched [my] monkey with his hand," and that "candy came out of his dick." *Id.* at 165.

In June 1998, Anderson's attorney filed a Waiver of Right to Trial by Jury. The Waiver was signed by Anderson's attorney but not by Anderson. The trial court approved the Waiver the same day that it was filed. A bench trial was then held in January 1999. B. did not testify at Anderson's trial because the trial court found her incompetent to testify under the Protected Persons Statute. As such, Dunkin, Raventos, and Officer Deckard testified about B.'s out-of-court statements to them. Anderson was convicted as charged, and the trial court sentenced him to the presumptive term of thirty years.

---

1. Ind.Code § 35–42–4–3(a)(1).

In June 1999, Anderson filed a Motion to Correct Error, which alleged that he did not "knowingly, voluntarily and intelligently waive[ ] his right to trial by jury." Appellant's App. p. 151. Following a hearing, the trial court denied the motion. In August 2004, Anderson sought and received permission to file a belated appeal.

### Discussion and Decision

Anderson raises three issues on appeal, one of which is dispositive. Specifically, Anderson contends that he did not knowingly, voluntarily, and intelligently waive his right to a trial by jury. The State, apparently conceding this point, "submits this issue to this Court without recommendation." Appellee's Br. p. 9. However, because one of the other issues that Anderson raises—whether the trial court erred in admitting B.'s out-of-court statements into evidence—will likely arise on retrial, we address this issue now for guidance.[2]

### I. Waiver of Right to Trial by Jury

■ Anderson contends that he did not knowingly, voluntarily, and intelligently waive his right to a trial by jury. The United States and Indiana Constitutions guarantee the right to trial by jury. *Poore v. State*, 681 N.E.2d 204, 206 (Ind.1997). A person charged with a felony has an automatic right to a jury trial. *Id.* at 207. A defendant is presumed not to waive this right unless he affirmatively acts to do so. *Id.* To constitute a valid waiver of the right to a jury trial, the defendant's waiver must be knowingly, voluntarily, and intelligently made with sufficient awareness of the relevant circumstances surrounding its entry and consequences. *O'Connor v. State*, 796 N.E.2d 1230, 1233 (Ind.Ct.App. 2003). "The defendant must express his personal desire to waive a jury trial and

such a personal desire must be apparent from the court's record, whether in the form of a written waiver or a colloquy in open court." *Jones v. State*, 810 N.E.2d 777, 779 (Ind.Ct.App.2004) (internal citation omitted); *see also O'Connor*, 796 N.E.2d at 1234. A defendant's filing of a *signed* jury trial waiver adequately reflects a personal desire to waive this right and constitutes the affirmative act necessary to do so for a felony charge. *Poore*, 681 N.E.2d at 207; *see also O'Connor*, 796 N.E.2d at 1234 (noting that the defendant personally signed the written waiver).

■ Here, the record shows that during Anderson's initial hearing, the trial court advised him that he had the right to a trial by jury. During a May 12, 1998, pretrial hearing, defense counsel advised the court that "we are contemplating possibly waiving jury in this case" but that he wanted to confer with the prosecutor first. Tr. p. 91. One month later, on June 18, 1998, defense counsel filed a Waiver of Right to Trial by Jury. Importantly, Anderson did not sign this Waiver. In addition, the record does not disclose that Anderson expressed his personal desire to waive his right to a trial by jury or that he was informed about the consequences of such a waiver. Because there is no waiver signed by Anderson or a colloquy in open court regarding Anderson's personal desire to waive his right to a trial by jury, we cannot say that Anderson affirmatively acted to waive this right. Accordingly, the Waiver is invalid. We therefore vacate Anderson's conviction and remand this case for a new trial.

### II. B.'s Out–of–Court Statements

■ Because this issue will likely arise on retrial, we address Anderson's

---

2. The other issue Anderson raises on appeal is whether the evidence is sufficient to support his conviction.

contention that the trial court erroneously admitted B.'s out-of-court statements to Dunkin, Raventos, and Officer Deckard. We generally review questions regarding a trial court's admission of evidence to determine whether a trial court abused its discretion. *Allen v. State*, 813 N.E.2d 349, 360 (Ind.Ct.App.2004), *trans. denied.* Where the alleged error also involves claims of legal error, we judge questions of law *de novo. Hill v. Ebbets Partners Ltd.*, 812 N.E.2d 1060, 1063, *aff'd on reh'g*, 816 N.E.2d 965 (Ind.Ct.App.2004), *trans. denied.*

■■■ The trial court admitted B.'s statements to Dunkin, Raventos, and Officer Deckard under the Protected Persons Statute, Indiana Code § 35–37–4–6. Anderson argues that (1) all the statements were testimonial and therefore barred by *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), because they were not subject to cross-examination [3] and (2) B. was not available for meaningful cross-examination under the Protected Persons Statute, so her statements were admitted erroneously under that statute as well.

The United States Supreme Court held in *Crawford* that the Sixth Amendment to the United States Constitution prohibits the introduction of testimonial statements in a criminal trial where the defendant had no opportunity to cross-examine the person who made the statements. *Id.* at 68–69, 124 S.Ct. 1354. The first question in our analysis therefore must be whether the out-of-court statements at issue in this case are testimonial. While the United States Supreme Court did not develop a full definition of "testimonial" in *Crawford*, it provided guidance. For instance, the court indicated that "at a minimum . . .

prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and . . . police interrogations" are testimonial. *Id.* at 68, 124 S.Ct. 1354. The court also indicated that one guidepost for determining whether hearsay is testimonial is whether an objective witness would reasonably believe that the statement would be available for use at a later trial. *Id.* at 52, 124 S.Ct. 1354.

Although the United States Supreme Court did not develop a full definition of "testimonial" in *Crawford*, the Indiana Supreme Court recently issued an opinion defining "testimonial" statements:

> [W]e conclude that a "testimonial" statement is one given or taken in significant part for purposes of preserving it for potential future use in legal proceedings. In evaluating whether a statement is for purposes of future legal utility, the motive of the questioner, more than that of the declarant, is determinative, but if either is principally motivated by a desire to preserve the statement it is sufficient to render the statement "testimonial." If the statement is taken pursuant to established procedures, either the subjective motivation of the individual taking the statement or the objectively evaluated purpose of the procedure is sufficient.

*Hammon v. State*, 829 N.E.2d 444, 456 (Ind.2005). Our supreme court also held that "statements to investigating officers in response to general initial inquiries are nontestimonial." *Id.* at 446.

Using these guidelines, we determine that B.'s statements to Dunkin are nontestimonial. B.'s statements to her great-grandmother were not elicited "in significant part for purposes of preserving

**3.** Although Anderson's trial was in 1999, his belated appeal was "pending" at the time *Crawford* was decided.

[them] for potential future use in legal proceedings." *See id.* at 456. Rather, Dunkin, who was babysitting B. at the time and who was responsible for her safety, asked B. where she was going, to which B. spontaneously made the incriminating statements against Anderson. *See Purvis v. State,* 829 N.E.2d 572, 579 (Ind.Ct.App. 2005) ("Parents of young children constantly question them about their activities, often to ensure that the children are behaving safely. When parents find illegal activity or victimization, they naturally contact appropriate authorities. The fact that parents turn over information about crimes to law enforcement does not transform their interactions with their children into police investigations."), *trans. denied.* Accordingly, we hold that B.'s statements to Dunkin are nontestimonial. Because B.'s statements to Dunkin are nontestimonial, Indiana evidence law—in this case the Protected Persons Statute—governs their admissibility, not the Confrontation Clause principles elaborated in *Crawford. Id.* at 582.

■■■ The Protected Persons Statute governs testimony by, among others, children under age fourteen who are victims of sex crimes. Ind.Code § 35–37–4–6(b)(2), (c). The statute provides that:

> [a] statement . . . that . . . concerns an act that is a material element of an offense listed in subsection (a) or (b) [including child molesting] that was allegedly committed against the [protected] person and is not otherwise admissible in evidence is admissible in evidence in a criminal action for an offense listed in subsection (a) or (b) if the requirements of subsection (e) are met.

*Id.* at (d) (punctuation and paragraphing omitted). To be admissible under Subsection (e), a court must find after a hearing attended by the protected person "that the time, content, and circumstances of the statement . . . provide sufficient indications of reliability" *and* the protected person must either testify at trial or be unavailable to testify for any of several reasons including "that the protected person is incapable of understanding the nature and obligation of an oath." *Id.* at (e)(1), (e)(2)(B)(iii). Furthermore, if the protected person is unavailable to testify at trial, the statement may be admitted only if the protected person was available for cross-examination at the hearing required by Subsection (e) or when the statement was made. *Id.* at (f).

In this case, the trial court held the hearing required by Subsection (e) and determined that B. was unavailable as a witness because she could not understand the nature and obligation of an oath. The trial court also determined that B.'s statements to Dunkin "provide sufficient indications of reliability for their admission as substantive evidence" because: (1) B.'s first statement to Dunkin was spontaneous; (2) B. has no apparent motive to fabricate; (3) B.'s statements demonstrate developmentally unusual knowledge of sexual matters for a three-year-old child; (4) B. appeared to have personal knowledge of the events described; (5) B. appears capable of distinguishing fact from fantasy; and (6) the credibility of Dunkin is not in question. Appellant's App. p. 80–81.

Anderson does not dispute the trial court's findings regarding reliability; rather, he argues that B.'s statements to Dunkin are inadmissible under the Protected Persons Statute because he had no real or meaningful opportunity to cross-examine B. as required by Subsection (f) of the statute. Anderson asserts: "None of the questioners [at the hearing] was able to broach the subject of [B.'s] statements, as she would not even answer questions regarding the color of a chair or her dress. Thus, despite Anderson's best efforts, no

cross-examination of [B.] was possible." Appellant's Br. p. 19 (internal citation omitted).

Under applicable precedent, however, Anderson's opportunity to cross-examine B. at the Protected Persons hearing satisfied the statutory cross-examination requirement. Our supreme court has found that the statutory requirement is satisfied when a child, judged incompetent to testify at trial, is available to be cross-examined at a hearing under the Protected Persons Statute, even if the child's testimony at the hearing is not coherent. *Pierce v. State*, 677 N.E.2d 39, 46 (Ind.1997). And we recently held in *Purvis* that the statutory requirement was satisfied where a developmentally disabled child gave "incoherent, distorted, and nonsensical" testimony at the Protected Persons hearing. 829 N.E.2d at 584. Moreover, the statute is plainly written to require cross-examination in situations where the witness to be cross-examined is incompetent to testify at trial. *Compare* I.C. § 35–37–4–6(e)(2)(B)(iii) (stating "the protected person is incapable of understanding the nature and obligation of an oath") *with* I.C. § 35–37–4–6(f) (stating "the protected person [must be] available for cross-examination").

Because Anderson's opportunity to cross-examine B. at the Protected Persons hearing satisfied the statutory cross-examination requirement, the trial court properly admitted B.'s statements to Dunkin into evidence at trial under that statute. Assuming all things remain the same, B.'s statements to Dunkin would be admissible at Anderson's retrial.

■ We reach a different conclusion, however, with respect to B.'s statements to Raventos and Detective Deckard. We first address B.'s statements to Detective Deckard. Curiously, the State makes no argument on appeal that B.'s statements to Detective Deckard are nontestimonial, and we must agree. Detective Deckard became involved in this case after B. had made serious child molestation allegations against Anderson. As such, B.'s statements to Detective Deckard were not "in response to general initial inquiries." *Hammon*, 829 N.E.2d at 446. In fact, Raventos testified at trial that Detective Deckard interviewed B. "for the benefit of ... his investigation." Tr. p. 164. Because the principal motive of Detective Deckard in interviewing B. was to preserve her statements for future use in legal proceedings, we hold that her statements to him are "testimonial."

■ With respect to B.'s statements to Raventos, the State argues that they are nontestimonial because three-year-old B. had no reason to believe that her statements were going to be used at trial. The State asserts that "[i]t is the witness' belief that counts and not the interviewer's." Appellee's Br. p. 7. However, since the State filed their appellee's brief in this case, our supreme court decided *Hammon*, which does not stand for that proposition. To the contrary, *Hammon* provides that in evaluating whether a statement is for purposes of future legal utility, "the motive of the questioner, more than that of the declarant, is determinative, but if either is principally motivated by a desire to preserve the statement it is sufficient to render the statement 'testimonial.'" 829 N.E.2d at 456. It is clear that Raventos was taking B.'s statements for potential future use in legal proceedings. That is, Raventos, who had worked for the Office of Family and Children for five years and who had specialized training in sexually abused children, contacted the Indiana State Police the day after she first interviewed B. From that point forward, Raventos' interviews with B. were coordinated with and directed by Detective Deckard.

Because Raventos was principally motivated by a desire to preserve B's statements, we hold that pursuant to *Hammon,* B.'s statements to her are "testimonial."

 Having concluded that B.'s statements to Raventos and Detective Deckard are testimonial, we must now determine whether Anderson was afforded an opportunity to cross-examine B. as required by *Crawford.* Anderson was allowed to cross-examine B. at the Protected Persons hearing. As we discussed above, this hearing satisfied the requirements of the Protected Persons Statute. But, B.'s testimony at the hearing did not constitute cross-examination for *Crawford* purposes because the trial court determined that B. was "incapable of understanding the nature and obligation of an oath" and was therefore "unavailable as a witness for this trial." Appellant's App. p. 80. "[T]he teachings of Crawford demand a higher standard of cross-examination for out-of-court testimonial statements than non-testimonial statements because testimonial statements implicate to a greater extent confrontation concerns." *Purvis,* 829 N.E.2d at 583–84 (citing *Crawford,* 541 U.S. at 69, 124 S.Ct. 1354). Since B. was incompetent to testify at trial, Anderson's cross-examination of her at the hearing did not satisfy the requirements of *Crawford* because Anderson lacked an opportunity for "full, adequate, and effective cross-examination." *Id.* (quoting *Parker v. State,* 773 N.E.2d 867, 868 (Ind.Ct.App.2002), *trans. denied* ). As we stated in *Purvis,* "[w]e cannot . set forth a precise test for determining what constitutes 'full, adequate, and effective cross-examination.' " *Id.* But, we conclude that at least under the circumstances of this case, a witness unable to appreciate the obligation to testify truthfully cannot be effectively cross-examined for *Crawford* purposes. *See id.* Therefore, because B's statements to Raventos and Detective Deckard are "testimonial" and assuming that B. is still incompetent to testify at Anderson's retrial, we hold that B's out-of-court statements to Raventos and Detective Deckard would not be admissible at Anderson's new trial.

Reversed and remanded.

SHARPNACK, J., and MAY, J., concur.