**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-6366

DONALD ALLISON BLOUNT, JR.,

            Petitioner – Appellant,

      v.

JAMES HARDY,

            Respondent – Appellee,

      and

ROY COOPER; THEODIS BECK,

            Respondents.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Malcolm J. Howard, Senior District Judge.  (5:07-hc-02071-H)

Argued:  May 15, 2009                    Decided:  July 9, 2009

Before MICHAEL, SHEDD, and AGEE, Circuit Judges.

Affirmed by unpublished opinion.  Judge Shedd wrote the opinion, in which Judge Michael and Judge Agee joined.  Judge Michael wrote a separate concurring opinion.

**ARGUED:** April M. Giancola, NORTH CAROLINA PRISONER LEGAL SERVICES, INC., Raleigh, North Carolina, for Appellant.  Mary Carla Hollis, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellee.  **ON BRIEF:** Dawn N. Blagrove, Paul

Green, NORTH CAROLINA PRISONER LEGAL SERVICES, INC., Raleigh, North Carolina, for Appellant. Roy Cooper, Attorney General of North Carolina, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

SHEDD, Circuit Judge:

Donald Allison Blount, Jr., a North Carolina inmate, appeals the dismissal of his petition for a writ of habeas corpus. Blount was convicted by a North Carolina court of first-degree rape of a child, first-degree sex offense, and taking indecent liberties with a child. He was sentenced to a range of 336 to 413 months imprisonment. We granted a certificate of appealability ("COA") to determine whether the state trial court's admission of out-of-court statements made by the child victim to therapists violates the Sixth Amendment right to confront witnesses. For the following reasons, we affirm.

I.

We begin with a summary of the facts pertaining to the underlying crime, as articulated by the North Carolina Court of Appeals in an unpublished opinion in Blount's direct appeal:

"S.F. (victim or child) was three years old when her mother . . . began living with defendant (who is not the child's father). Defendant and mother smoked marijuana and used cocaine on a regular basis. In November of 2002 they were living with defendant's mother because neither of them were employed. Defendant and mother shared a bed, and the victim slept in a child's bed in the same room.

"One evening, about the sixteenth of November, 2002, defendant and mother went to bed after using marijuana and cocaine. The victim was already asleep in her bed. At trial, mother testified that she awoke to see defendant standing at the foot of the victim's bed. She saw defendant remove the victim's clothes, remove his clothes, apply lotion to her and himself, and briefly insert his penis into the child's vagina. Defendant left the room, returned, re-dressed and returned to bed. Mother went back to sleep without saying anything, because she feared defendant.

"The victim eventually told what had happened to her to four different people. The victim moved in with her maternal grandmother . . . , because her mother and defendant had no stable housing. Grandmother testified that though the victim had been a happy-go-lucky child before, when she came to live with her after 16 November 2002 she clung to the grandmother and did not eat or sleep well. The victim complained of pain in her vaginal area, which was red, and stated she was having difficulty urinating.

"In December of 2002, grandmother took the child to a pediatrician, who informed grandmother that the child had gonorrhea. Grandmother did not know who had given the victim gonorrhea, but on 25 January 2003 the child told her that she had a secret. She climbed onto grandmother's lap, crying, and

4

told her that her mother had held her down while defendant inserted a 'black needle with white medicine' into her vagina. The victim then stated that her mother and defendant took her into the bathroom and cleaned her up, that her vagina hurt and bled a little, and that they told her what had happened was a big secret and that she would have her toys taken away and be punished if she told anyone.

"A friend (Lisa) was living with grandmother on 25 January 2003 when the victim told grandmother what had happened to her, and she heard the conversation. Her account of what the victim said that night was consistent with that of the grandmother.

"Wendy Meadows . . . was a counselor working for Kids First child advocacy center in December 2002 when the victim was referred to her by Department of Social Services. She testified that the victim told her in their second session: 'They gave me candy and told me not to tell.' In their third session, the victim told Meadows that, while holding her legs, defendant put a black needle with white medicine in her vagina, while her mother held her down by the neck. Meadows had two sets of anatomical dolls, one a white family and one a black family. Meadows asked the victim to show her what had happened using the dolls. The victim chose a girl doll and laid it on the table, saying the doll was lying on a bed, she then chose an adult female doll, indicated that it was her mother, and used the

5

hands of that doll to press down on the neck of the girl doll. She then chose a black doll, and indicated it was defendant. She first had the male doll touch the girl doll in the area of its vagina, then she told Meadows that defendant put a needle in her. When asked to show how defendant did this, the child 'took the black adult male doll and laid it on top of the girl doll that was lying on the table.' Finally, the victim told Meadows that 'it hurt, and I cried.'

"The victim was referred to another counselor, Kelly Roberts . . . . According to Roberts' testimony, on their sixth session, the victim told Roberts the same story she had told the other women: her mother held her down by the neck and arms, while defendant first touched her vagina then inserted a black needle with white medicine into her. After her first revelation to Roberts, the victim repeatedly said, '[Mother] and [defendant] hurt me.' The victim repeated this story multiple times in following sessions, and her story remained consistent. The victim also drew pictures depicting the events she had described . . . .

"Dare County Department of Social Services became involved in the matter in December of 2002, after it was informed that the child had gonorrhea. Department of Social Services arranged for both defendant and mother to be tested for gonorrhea, but neither kept the appointments. Mother was never tested for

gonorrhea.  Pursuant to a court order, defendant was tested on 15 March 2004 (approximately sixteen months after the event in question), and the results were negative for gonorrhea.  Dr. Lisa M. Johnson testified that if a person had been successfully treated for gonorrhea, any later test would be negative."  J.A 381-82.

## II.

## A.

At trial, S.F. was called as a witness but was unable to respond in any meaningful manner to the questions posed to her. The trial court determined that she was unavailable as a witness.  Among others, Meadows and Roberts were called as witnesses by the State.  They testified as to what S.F. had told them, including testimony that Blount had sexually abused her.

Blount argued in state court proceedings that allowing Meadows and Roberts to testify as to what S.F. told them is a violation of his Sixth Amendment right of confrontation.  See Crawford v. Washington, 541 U.S. 36 (2004).[1]  In analyzing

---

[1] We granted a COA on "[w]hether Blount's Sixth Amendment right to confront witnesses against him, as articulated in Crawford . . . , was violated by the admission at trial of out-of-court statements made by a child witness to therapists, who were under a known legal duty to report those statements to the state for possible use at trial."  The government asks us to dismiss the COA as improvidently granted because the "legal duty to report" portion of the COA is raised for the first time before us and is therefore procedurally barred.  At oral (Continued)

Blount's Crawford claim on direct appeal, the North Carolina Court of Appeals noted that "[f]ollowing Crawford, the determinative question with respect to confrontation analysis is whether the challenged hearsay statement is testimonial." J.A 383. (internal citation and quotation marks omitted). The court of appeals further observed that "[t]he United States Supreme Court determined in Crawford that 'at a minimum' the term testimonial applies to 'prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations.'" Id. (internal citation omitted) (emphasis in original). Finally the court of appeals stated:

> [the North Carolina] Supreme Court has also recognized in Crawford an additional prong necessary to show that a statement is testimonial. This 'additional prong of the analysis for determining whether a statement is 'testimonial' is, considering the surrounding circumstances, whether a reasonable person in the declarant's position would know or should have known his or her statements would be used at a subsequent trial. This determination is to be measured by an objective, not subjective, standard.'

Id. (citation omitted).

---

argument, Blount argued that the issue before us was the same Crawford claim that he raised in each proceeding below, and that the mandatory reporting requirement is not the issue he asked us to review, but rather was a small facet of his argument. We decline to dismiss the COA, and we address the claim as presented to us.

With this understanding of Crawford, the court of appeals reviewed the record regarding S.F.'s declarations to the therapists. The court of appeals stated that Meadows was in private practice, never encouraged S.F. to disclose the abuse, and there was no evidence that Meadows ever discussed the potential for any criminal consequences or punishment for Blount. See Id. As for Roberts, the court of appeals observed that she told S.F. that their sessions were confidential and that she would not disclose what S.F. said, and there was no evidence that S.F. was made aware that her statements could be used against Blount or that Roberts ever discussed any potential punishment for Blount. See Id. at 384. Finally, the court of appeals held that

> In light of the fact that the young victim in the instant case was speaking with therapists, not police officers, and that the record is devoid of any evidence that she had the slightest inkling that defendant faced criminal charges, or even that she understood what criminal charges were, we hold that her statements to Meadows and Roberts were not testimonial for Confrontation Clause purposes. A reasonable three or four year old in the victim's situation would not have had any reason to know that her statements would be used at a subsequent trial.

Id. (emphasis in original).

B.

Blount filed his habeas petition in the district court arguing that the North Carolina Court of Appeals applied Crawford incorrectly. In response, the state moved for summary

9

judgment on Blount's claim. The district court granted the motion and dismissed Blount's habeas petition.

We review the district court's dismissal of Blount's petition de novo. See Tucker v. Ozmint, 350 F.3d 433, 438 (4th Cir. 2003). However, under 28 U.S.C. § 2254, "the scope of our review is highly constrained." Jackson v. Johnson, 523 F.3d 273, 276 (4th Cir. 2008). We may only grant Blount relief if the state court's adjudication of his claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

The "contrary to" and "unreasonable application" clauses of § 2254(d) have independent meanings. Tucker, 350 F.3d at 438. A state court's decision is "contrary to" clearly established federal law under § 2254(d)(1) when it "applies a rule that contradicts the governing law set forth" by the United States Supreme Court, or "confronts a set of facts that are materially indistinguishable from a decision of . . . [the Supreme] Court and nevertheless arrives at a result different from . . . [that] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

10

A state court's decision involves an "unreasonable application" of clearly established federal law under § 2254(d)(1) "if the state court identifies the correct governing legal rule from . . . [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Williams, 529 U.S. at 407. This standard is quite deferential: "The state court's application of clearly established federal law must be 'objectively unreasonable,' and 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Robinson v. Polk, 438 F.3d 350, 355 (4th Cir. 2006) (quoting Williams, 529 U.S. at 411). Moreover, when "assessing the reasonableness of the state court's application of federal law, the federal courts are to review the result that the state court reached, not whether [its decision] [was] well reasoned." Wilson v. Ozmint, 352 F.3d 847, 855 (4th Cir. 2003) (quotation marks omitted).

C.

Blount argues that his Sixth Amendment right of confrontation was violated when Meadows and Roberts, acting in an investigatory and prosecutorial role, testified to the statements S.F. had made, thereby making S.F.'s statements "testimonial." He therefore contends that he is entitled to

11

habeas relief.  In granting summary judgment, the district court held that "[c]ontrary to Petitioner's conclusion, the North Carolina Court of Appeals' adjudication of the Confrontation Clause issue is not contrary to, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States."  J.A. 424.  In holding that Blount's claim lacks merit, the district court noted that Blount "has pointed to nothing in the evidence to show that the victim knew or had reason to know that her revelations to Meadows and Roberts would be used against Petitioner at trial."  Id.

We agree with the district court that the North Carolina Court of Appeal's determination of this issue is not unreasonable.[2]  The state court properly analyzed this claim under Crawford and concluded that S.F. could not have known that her statements to the therapists would be used at trial against Blount.  Under our review, the North Carolina Court of Appeals' conclusion that S.F.'s statements to her therapists were not "testimonial" is not contrary to or an unreasonable application of federal law.  See e.g., United States v. Peneaux, 432 F.3d

---

[2]  We note that a state court is given more latitude to reasonably interpret federal law when the federal law involves, as here, a general standard set forth by the Supreme Court.  See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

882, 896 (8th Cir. 2005) (holding the admission of statements to a physician by a child regarding physical abuse does not violate the Sixth Amendment right to confrontation); State v. Vaught, 682 N.W.2d 284, 293 (Neb. 2004) (holding the admission of a statement by a child victim to her physician that the defendant had sexually assaulted her was not testimonial).  Therefore, we affirm the dismissal of Blount's habeas petition.


                              III.

     Based on the foregoing, we affirm the district court's order dismissing Blount's habeas petition.

                                             AFFIRMED

13

MICHAEL, Circuit Judge, concurring:

I concur in the court's opinion and in the conclusion that "the North Carolina Court of Appeal's determination . . . is not unreasonable" under current Supreme Court precedent. <u>Ante</u> at 12. I write separately to express my concern about what I see as a very troubling case that would have benefitted from clearer guidance as to how the Confrontation Clause applies to the out-of-court statement of a child witness who is unavailable to testify because of her very young age.

I.

Donald Blount was convicted in North Carolina state court of the rape and sexual molestation of a child and sentenced to prison for 28 to 34 years. His conviction was based largely on the hearsay testimony of two child therapists who assembled an account of events after multiple interviews with S.F., the three- to four-year-old victim. The victim was referred to the first of these therapists by law enforcement and social services personnel after their own interview failed to produce any evidence. The state acknowledges that at least one purpose of the referral was to obtain evidence against Blount. The therapists, of course, were under a legal duty to report any evidence of abuse they uncovered. <u>See</u> N.C. Gen. Stat. §§ 7B-301, 302(e). At trial both therapists recounted S.F.'s

description of the assault from her therapy sessions.  At no point did Blount have an opportunity to cross-examine S.F., the child declarant.

## II.

In Crawford v. Washington, 541 U.S. 36, 68 (2004), the Supreme Court held that "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination."  However, the Court explicitly "le[ft] for another day any effort to spell out a comprehensive definition of 'testimonial.'" Id.  Instead, the Court held that "at a minimum" the term "testimonial" covers police interrogations and "prior testimony at a preliminary hearing, before a grand jury, or at a former trial." Id.  The Court also listed the following formulations of the "core class of 'testimonial statements'":

> [1] ex parte in-court testimony or its functional equivalent--that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially, [2] extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions, [and] [3] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

Id. at 51-52 (emphasis added) (internal citations omitted).

15

It was on the third, most general formulation that the North Carolina Court of Appeals based its conclusion that S.F.'s statements to her therapists were not testimonial. State v. Blount, No. COA05-134, 2005 N.C. App. LEXIS 2606, slip op. at 13-14 (2005) (unpublished) ("A reasonable three or four year old in the victim's situation would not have had any reason to know that her statements would be used at a subsequent trial."). In light of the lack of specificity of the third-formulation in Crawford, I agree with my colleagues that the North Carolina Court of Appeals' decision is not an unreasonable one. However, had the North Carolina court reached the opposite conclusion, a federal habeas court could easily have held that to be reasonable as well. See United States v. Bordeaux, 400 F.3d 548, 556 (8th Cir. 2005) (concluding that a child's statements during a "forensic interview" were testimonial because the purpose of the interview was "to collect information for law enforcement" about the alleged sexual abuse); Anderson v. State, 833 N.E.2d 119, 125 (Ind. Ct. App. 2005) (investigative intent of questioner rendered child's statements testimonial). This opposite conclusion is reasonable because Crawford's imprecise rule provides little guidance for applying the Confrontation Clause in the specific case of a child declarant's statement to therapists serving an investigative function for law enforcement. Cf. Crawford, 541 U.S. at 52 ("Statements taken by

16

police officers in the course of interrogations are also testimonial under even a narrow standard.").

Furthermore, the limited amount of additional direction provided by the Supreme Court since Crawford does not necessarily cut in favor of the North Carolina Court of Appeal's decision. In Davis v. Washington, 547 U.S. 813 (2006), the Court held that statements to law enforcement personnel were not testimonial when "circumstances objectively indicat[e] that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency," but are testimonial when "the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." Id. at 822. The Court thus held that statements made in a 911 call during an ongoing domestic disturbance were not testimonial, whereas statements made to police officers after a domestic disturbance were testimonial because there was no immediate danger. In distinguishing the questioning during the event in the 911 call from that in Crawford (post-event), the Court noted several factors it considered important. First, the 911 call described events "as they were actually happening, rather than 'describ[ing] past events.'" Id. at 827 (emphasis in original). Second, statements made in the 911 call were made while the

17

declarant was "facing an ongoing emergency," rather than "report[ing] a crime absent any imminent danger." Id. Third, the questions asked by the 911 operator were "necessary to be able to resolve the present emergency, rather than simply to learn (as in Crawford) what had happened in the past." Id. (emphasis in original). Finally, there was a "difference in the level of formality between the two interviews." Id. When the Davis factors are applied to S.F.'s statements in this case, it would be reasonable to conclude that they are testimonial. Her statements described past events and were not made during an ongoing emergency. The therapists' questions, meanwhile, were asked in a formal environment (a medical office) and for the (partial) purpose of learning about past abuse.

Of course, neither Davis nor any other Supreme court case touches directly on the issue presented here -- whether a child's statements to therapists who will report to law enforcement are testimonial. Moreover, the purposeful generality of Davis and Crawford leaves us without answers to crucial questions. For instance, it is unclear whether the declarant's age should be taken into account (as it was in this case) in an objective analysis of whether statements are testimonial. The appropriate question may be whether a "reasonable three or four year old" would believe that her therapists were gathering evidence for a possible trial, see

18

State v. Blount, No. COA05-134, slip op. at 13-14, or it may be whether an objective, competent witness would reasonably believe that to be the case, see Crawford, 541 U.S. at 53. In addition, Crawford and Davis fail to provide guidance as to the weight to be given to the interrogator's purpose in conducting an interview.

Because Crawford and Davis provide only generalized guidance for situations beyond their specific facts, the North Carolina Court of Appeals' decision is reasonable essentially by default. But the specific facts of this case present an especially close question and demonstrate why the inferior courts, including this one, are in need of additional guidance. S.F., a three- or four-year-old child, was interviewed on several occasions by therapists who served, at least in part, as proxies for law enforcement. The first of these therapists was solicited by law enforcement, and both were expected to relay any description by S.F. of Blount's alleged assault to the Department of Social Services, which, in turn, would relay it to the District Attorney's Office. At trial both therapists recounted S.F.'s description of the assault as part of the state's case-in-chief. Yet, despite this close link between S.F's therapists and law enforcement, her statements were treated as non-testimonial by the North Carolina Court of Appeals.

19

On the one hand, we must be mindful of the practical challenges facing a court presented with the proffered (out-of-court) statement of a very young child who is allegedly the victim of a heinous crime. On the other, we must be mindful of the consequences of vitiating the Confrontation Clause right in any case involving the statement of a child deemed too young to understand the criminal justice system. The latest signal from the Supreme Court suggests that the Sixth Amendment right to confrontation remains a powerful one. See Melendez-Diaz v. Massachusetts, No. 07-591 (U.S. June 25, 2009). Nevertheless, the lack of direction for dealing with today's facts leaves us without leeway to disagree with the North Carolina court and recognize the right.